UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| EDWARD NORTRUP,<br><br>   Plaintiff,<br><br> v.<br><br>TOYOTA MOTOR CORPORATION, TOYOTA MOTOR NORTH AMERICA, INC., TOYOTA MOTOR SALES, U.S.A., INC., and TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC.<br><br>   Defendants. | Case No.:<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

1. Edward Nortrup ("Nortrup") hereby brings this action alleging that Defendants Toyota Motor Corporation ("TMC"), Toyota Motor North America, Inc. ("TMNA"), Toyota Motor Sales, U.S.A., Inc. ("TMS"), and Toyota Motor Engineering & Manufacturing North America, Inc. ("TMEM") (collectively, "Toyota") infringe United States Patent Nos. U.S. Patent Nos. 11,307,048 (the "'048 Patent") and 11,874,131 (the "'131 Patent") (collectively, the "Asserted Patents") in violation of the patent laws of the United States of America, 35 U.S.C. § 1 et seq.

### INTRODUCTION

### Edward Nortrup

2. Edward Nortrup is a prolific inventor having received a total of 93 issued patents in multiple industries over the course of his career. His engineering journey began in 1987 at Sylvania, where he led the development of miniaturized high-intensity discharge (HID) lighting

systems. His pioneering work in this field resulted in 34 issued patents, reflecting significant advancements in compact yet powerful lighting technologies.

3. Building on his expertise in both technology and intellectual property, Nortrup joined Color Kinetics as a Patent Manager. While overseeing patent strategy, he remained actively engaged in innovation, contributing to two issued patents that further advanced the company's lighting technologies.

4. Nortrup left Color Kinetics to focus on a navigation technology, leveraging insights into traffic patterns. His innovative developments in this space were recognized through 18 issued patents, further underscoring his ability to transform complex problems into practical, real-world applications.

5. Throughout his career, Nortrup has continued to drive technological advancements, with his inventions spanning lighting, navigation, augmented reality, and other cutting-edge fields. His extensive patent portfolio is a testament to his relentless pursuit of technological progress and his unwavering commitment to innovation.

## Inventions of the Asserted Patents

6. Prior to the earliest priority date of the Asserted Patents in 2004, there were essentially two schools of thought on how to implement motor vehicle navigation systems that utilize real-time traffic data: (1) built-in systems and (2) cell phone-based systems. Built-in systems relied on cellular connectivity specific to an in-vehicle navigation system to report location data and receive traffic pattern data. Benefits of this approach potentially included a robust GPS location system with large external GPS antenna, a driver-friendly interface (e.g., a display integrated in the dashboard, use of the vehicle's audio system for voice commands), and integration with other vehicle data such as alarms and engine data. This approach also had the

potential benefit that location data sent from the in-vehicle navigation system to a navigation service provider would require no post-acquisition filtering to determine its relevance to traffic patterns; all data sent from built-in systems to navigation service providers would be known to come from a travelling vehicle rather than from a pedestrian standing or walking near a roadway.

7. Nortrup recognized that built-in systems also had certain challenges, however. For example, he appreciated that the in-vehicle hardware of built-in systems would be difficult and expensive to upgrade as navigation technology rapidly improved. He also predicted that many motorists would not be interested in purchasing a dedicated cellular plan for their vehicle's navigation system. Finally, because built-in navigation systems were likely to be uncommon for the foreseeable future, the traffic data generated by networks of such systems was unlikely to be robust, and thus traffic reporting would be unreliable.

8. The cell phone approach relied on portable cellular devices for navigation and reporting of location data. Nortrup recognized that the cell phone approach had certain advantages over the built-in approach. For example, because individuals were upgrading their cell phones much more rapidly than their cars and trucks, a real-time navigation architecture built on mobile devices would be more flexible and upgradable. Moreover, because cell phones were likely to be more ubiquitous than vehicles with advanced navigation features, the location data reported to navigation service providers would be more robust.

9. Nortrup also perceived certain disadvantages with the cell phone approach. Although the data reported from the devices would be more extensive, navigation service providers would have no definitive way of knowing whether a device reporting its location was inside a vehicle stuck in traffic (i.e., relevant to navigation) or rather on a pedestrian (irrelevant).

Nortrup also appreciated that the cell phone approach would deprive motorists of the driver-friendly and safer user interface, enlarged GPS antennae, etc. of the built-in approach.

10. The claimed inventions of the Asserted Patents brought the advantages of the built-in and cell phone approaches together while mitigating or eliminating their respective disadvantages. The Asserted Patents teach, for example, a vehicle with a built-in display consistent with the built-in approach, and which may include other features as well, but rather than perform the core navigation functions itself it relies on a connected cell phone for these functions. The cell phone determines the location of the phone or vehicle, receives traffic data, and transmits the relevant data to the vehicle for presentation of a map and route on the display. Croud-sourced cell phone location data relevant to traffic can be isolated by considering the cell phones' proximities to roadways and/or speed.

11. The claimed inventions improve the features and functionality of the vehicle, the cell phone, and the navigation network that processes traffic data into route recommendations. The vehicle is improved at least because it can present traffic-responsive navigation information through its built-in display without requiring the expensive hardware of built-in navigation systems. Further, the vehicle is improved by vastly augmenting the upgradability of its navigation system. The cell phone is improved at least by allowing its navigation applications to be presented on a safer and more driver-friendly display and potentially integrate with other features and hardware of the vehicle. And finally, the navigation network is improved by using ubiquitous cell phone location and movement data that is attributed to vehicle movement to provide robust crowd-sourced traffic data.

**Apple CarPlay and Android Auto**

12.     Over ten years after the earliest priority date of the Asserted Patents in 2014-2015, Apple and Google announced the release of CarPlay and Android Auto, respectively.  These systems are fundamentally similar, both allowing a cell phone to connect with a vehicle's infotainment system to expand and reformat the phone's user interface to the vehicle's screen(s), buttons, etc.  Whereas Apple CarPlay allows iPhone devices to connect to the infotainment system, Android Auto allows Android devices to connect.



(Depiction of Infotainment System Displaying Apple CarPlay Interface)



(Depiction of Infotainment System Displaying Android Auto Interface)

13. Apple CarPlay and Android Auto have been massively successful and are important drivers of consumer demand for new vehicles. In 2022, Apple reported that 98% of new cars in the U.S. come with CarPlay installed and that 79% of U.S. buyers would only buy a car if it supported CarPlay. (Kif Leswing, *Apple's New Car Software Could Be a Trojan Horse into the Automotive Industry*, CNBC (Jul. 22, 2022), *available at* https://www.cnbc.com/2022/07/22/apple-carplay-could-be-a-trojan-horse-into-the-automotive-industry.html#:~:text=Apple%20engineering%20manager%20Emily%20Schubert,a%20new%20vehicle%20without%20CarPlay.) "It's a must-have feature when shopping for a new vehicle," an Apple engineering manager stated during a presentation of new CarPlay features. (*Id.*) Indeed, a 2018 study showed that "[w]hen users have both CarPlay and a built-in system, they tend to use CarPlay." (Kif Leswing, *Apple's Massive Success with CarPlay Paves the Way for Automotive Ambitions*, CNBC (May 29, 2021), *available at* https://www.cnbc.com/2021/05/29/apple-carplay-massive-success-paves-way-for-automotive-entry.html.) Android Auto adoption and demand have

followed a similar trajectory.  (*See* Bill Froberg, *Android Auto and Apple CarPlay Remain Standard Fixtures in MY '23*, WARDS INTELLIGENCE (Nov. 28, 2023), *available at* https://wardsintelligence.informa.com/wi967531/android-auto-and-apple-carplay-remain-standard-fixtures-in-my-23#:~:text=Android%20Auto%20went%20from%2034.6,from%2035.2%25%20to%2093.9%25.)

### Toyota's Sales of Vehicles with of Apple CarPlay and Android Auto

14. On information and belief, Toyota started including Apple CarPlay in select new Toyota and Lexus vehicles in 2019, and it started including Android Auto in select new vehicles in 2020.  (*See Michael Potuck, Toyota expands its standard CarPlay offerings with 2019 RAV4 and Corolla Hatchback*, 9TO5MAC (Mar. 28, 2018), *available at* https://9to5mac.com/2018/03/28/toyota-carplay-2019-rav4-corolla/; Sean O'Kane, *Toyota Finally Caves and Announces Cars with Android Auto Compatibility*, VERGE (Feb. 7, 2019), *available at* https://www.theverge.com/2019/2/7/18215741/toyota-android-auto-compatibility-tundra-sequoia-tacoma-4runner; *Lexus Apple CarPlay®: Everything You Need to Know*, LEXUS DR PONCE, https://www.lexusdeponce.com/en/lexus-information/lexus-apple-carplay/; *Which Lexus vehicles support Android Auto?*, LEXUS, https://support.lexus.com/s/article/Which-Lexus-vehicles-10491#:~:text=The%20following%20Lexus%20vehicles%20will,Sep%2024%2C%202022.)  The number of models with Apple CarPlay and Android Auto increased over time, and today every new Toyota and Lexus vehicle has at least one of these features as a standard feature or an optional upgrade.  (*See Using Apple CarPlay® & Android Auto™ In Your Toyota Vehicle*, TOYOTA OF IRVING, https://www.toyotaofirving.com/manufacturer-information/apple-carplay-android-auto/#:~:text=Apple%20CarPlay%C2%AE%20is%20integrated%20into%20every%20new%20Toyota%20vehicle;

7

*How to Use Apple CarPlay in Your Lexus,* NORTH PARK LEXUS, https://www.nplexusrgv.com/how-to-use-apple-carplay/.)

15. Not only does Toyota sell new cars with Apple CarPlay and/or Android Auto, it also operates its Toyota Certified and L/Certified By Lexus Programs with a network of regional dealerships to sell used/preowned cars having Apple CarPlay and/or Android Auto. (*Certified Used Vehicles*, TOYOTA, https://www.toyotacertified.com/; *L/Certified Overview*, LEXUS, https://www.lexus.com/lcertified.) For example, Toyota provides websites for potential customers to locate available used inventory at local dealerships, provides warranty services, provides financial services, provides marketing/advertising, etc. to assist and induce Toyota and Lexus dealerships to sell used vehicles having Apple CarPlay and/or Android Auto. (*Id.*)

16. Collectively, these Toyota and Lexus vehicles with Apple CarPlay and/or Android Auto, which were made, used, sold, offered for sale, and/or imported during the life of one or more of the Asserted Patents—whether those vehicles were new or used/preowned—are referred to herein as the "Accused Vehicles." The Accused Vehicles include, without limitation, at least the following models:  4Runner, Avalon, Avalon Hybrid, bZ4X, C-HR, Camry, Camry Hybrid, Corolla, Corolla Cross, Corolla Cross Hybrid, Corolla Hatchback, Corolla Hybrid, Crown, GR86, GR Corolla, GR Supra, Grand Highlander, Highlander, Highlander Hybrid, Land Cruiser, Mirai, Prius, Prius Prime, RAV4, RAV4 Hybrid, RAV4 Prime, Sequoia, Sienna, Sienna Hybrid, Tacoma, Tundra, Venza, Venza Hybrid, Yaris, ES, ES Hybrid, GX, IS, LC, LS, LS Hybrid, LX, NX, NX Hybrid, RC, RX, RX Hybrid, RZ, TX, UX, and UX Hybrid.

17. Toyota has made, used, sold, offered for sale, and/or imported the Accused Vehicles throughout the United States, including in this District.  Toyota has also induced its network of dealers to sell, lease, and offer to sell both new and used Accused Vehicles

throughout the United States, including in this District.  Toyota has also induced end-users to use the Accused Vehicles throughout the United States, including in this District.

## THE PARTIES

18.     Edward Nortrup is an individual residing in Stoneham, Massachusetts.

19.     TMC is a corporation organized and existing under the laws of Japan with a principal place of business at 1 Toyota-cho, Toyota City, Aichi Prefecture 471-8571, Japan.  On information and belief, TMC does business itself, and through its subsidiaries, affiliates, and agents, in this District.

20.     TMNA is a corporation organized and existing under the laws of California with its principal place of business in this District at 6565 Headquarters Dr., Plano, TX 75024.  On information and belief, TMNA is a wholly owned subsidiary of TMC and is responsible for importing, making, marketing, distributing, offering for sale, and selling automotive vehicles and components from Toyota-managed brands (e.g., Toyota, Lexus, etc.) in the United States.

21.     TMS is a corporation organized and existing under the laws of the State of California headquartered at 6565 Headquarters Drive, Plano, Texas 75024.  On information and belief, TMS is a wholly owned subsidiary of TMC and is responsible for sales, marketing, and distribution of automotive vehicles from Toyota-managed brands in the United States, including in the State of Texas.

22.     TMEM is a corporation organized and existing under the laws of the State of Kentucky headquartered at 6565 Headquarters Drive, Plano, Texas 75024.  On information and belief, TMS is a wholly owned subsidiary of TMC and is responsible for development and manufacturing of automotive vehicles from Toyota-managed brands in the United States, including in the State of Texas.

## JURISDICTION AND VENUE

23. This is a civil action for patent infringement arising under the patent laws of the United States as set forth in 35 U.S.C. §§ 271, *et seq*.

24. This Court has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

25. This Court has personal jurisdiction over TMC because TMC conducts business in and has committed acts of patent infringement in this District, the State of Texas, and elsewhere in the United States and has established minimum contacts with Texas such that the exercise of jurisdiction over TMC would not offend the traditional notions of fair play and substantial justice. Upon information and belief, TMC transacts substantial business with entities and individuals in the State of Texas and the Eastern District of Texas, by among other things, importing, offering to sell, distributing, and selling products that infringe the Asserted Patents and that TMC purposefully directs into the State of Texas and this District as alleged herein. TMC places the Accused Vehicles and components thereof into the stream of commerce via authorized and established distribution channels with the knowledge and expectation that they will be sold in the State of Texas, including this District.

26. This Court has personal jurisdiction over TMNA, TMS, and TMEM at least because they are residents of Texas and have committed acts of patent infringement in this District.

27. Venue is proper with respect to TMC because TMC is a foreign entity subject to personal jurisdiction in this District.

28. Venue is proper in this District with respect to TMNA, TMS, and TMEM pursuant to 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b) because TMNA, TMS, and

TMEM reside in this District, have a regular and established place of business in this District, and have committed acts of infringement within this District.

## THE ASSERTED PATENTS

29. The '048 Patent, which is entitled "Method and System for Providing Travel Time Information," was duly and legally issued to inventor Edward Nortrup on April 19, 2022. A true copy of the '048 Patent is attached hereto as **Exhibit A**.

30. Nortrup is the owner of the entire right, title, and interest in and to the '048 Patent, which is presumed valid under 35 U.S.C. § 282.

31. The '131 Patent, which is entitled "Method and System for Providing Travel Time Information," was duly and legally issued to inventor Edward Nortrup on January 16, 2024. A true copy of the '131 Patent is attached hereto as **Exhibit B**.

32. Nortrup is the owner of the entire right, title, and interest in and to the '131 Patent, which is presumed valid under 35 U.S.C. § 282.

## COUNT I:  DIRECT INFRINGEMENT OF THE '048 PATENT

33. Nortrup incorporates by reference each of the above paragraphs as if fully restated herein.

34. Toyota directly infringed under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, one or more claims of the '048 Patent by making, using, selling, offering to sell, and/or importing the Accused Vehicles within the United States.

35. A detailed infringement analysis demonstrating how the Accused Vehicles practice each and every limitation of claim 1 of the '048 Patent, either literally or under the doctrine of equivalents, is provided in **Exhibits C and D**.

36. Toyota's direct infringement of the '048 Patent was also willful, as Nortrup informed Toyota of its infringement on April 19, 2022 (*see* **Exhibit G**) but Toyota refused to cease its infringement or negotiate a license to practice the '048 Patent.

37. As a result of Toyota's direct infringement of the '048 Patent, Nortrup has suffered monetary damages.

### COUNT II:  INDIRECT INFRINGEMENT OF THE '048 PATENT

38. Nortrup incorporates by reference each of the above paragraphs as if fully restated herein.

39. Toyota actively induced infringement of the '048 Patent by its regional Toyota and Lexus dealerships across the country.  Each of these dealerships directly infringed by selling, offering to sell, and/or using (e.g., leasing) new and used Accused Vehicles, and Toyota actively induces this infringement in a variety of ways, for example by supplying new Accused Vehicles to the dealerships to be sold/leased, offering its Toyota Certified and L/Certified By Lexus Programs to certify used vehicles for sale, providing training and technical support to regional sales teams to sell Accused Vehicles, providing marketing and advertising services, etc.

40. Toyota further actively induced infringement of the '048 Patent by its customers that purchased the Accused Vehicles under 35 U.S.C. § 271(b).  *See* **Exhibits C, D**.  By using Apple CarPlay or Android Auto in the Accused Vehicles in connection with a navigation app such as Apple Maps, Google Maps, or Waze, Toyota's customers put the invention into service, i.e., controlled the system as a whole and obtained benefit from it.  Indeed, by navigating using Apple CarPlay or Android Auto in the Accused Vehicles, Toyota's customers benefitted from each claimed component of the invention, for example because each claimed component contributed to augmenting the user's driving and navigating experience, providing a prominent and convenient user interface and helpful routing based on real-time traffic conditions.

41. Toyota's sale, support, instruction, and promotion of the Accused Vehicles to customers and prospective customers, especially with respect to the Apple CarPlay and Android Auto features of these Accused Vehicles, constituted active encouragement and instruction to infringe the '048 Patent. For example, Toyota's publication of its "How to Set Up Apple CarPlay" YouTube video, published in 2021, instructs customers that "Apple CarPlay now supports third party navigation apps like Google Maps and Waze, allowing even more ways to get to where you're going." (*How to Set Up Apple CarPlay | Toyota*, TOYOTA USA (2021), *available at* https://www.youtube.com/watch?v=AU_dA2V0Qig.) That video further states, "It is recommended to choose Always Enable, which will automatically activate Apple CarPlay each time a compatible iPhone is connected through the USB media port." (*Id. See also, e.g.*, *How-To Connect to Apple CarPlay | Lexus*, LEXUS (2019), *available at* https://www.youtube.com/watch?v=N6J3aqxrBJE.) Toyota published similar instructional materials for Android Auto. (*See, e.g.*, *How to Use Android Auto in Your Toyota | Toyota*, TOYOTA USA (2020), *available at* https://www.youtube.com/watch?v=e7QqzkTCQEU; *How To Set Up Android Auto | Toyota*, TOYOTA USA (2020), *available at* https://www.youtube.com/watch?v=gO3vNPDvnTs; *How-To Set Up Android Auto | Lexus*, LEXUS (2019), *available at* https://www.youtube.com/watch?v=GJ7nyUb-U6c.)

42. Toyota has had knowledge of the '048 Patent, of its infringement of the '048 Patent, of its dealers' infringement of the '048 Patent, and of its customers' infringement of the '048 Patent at least as of April 19, 2022, when Nortrup sent it a patent infringement notice letter explicitly accusing it of infringement. *See* **Exhibit G**.

43. Toyota's indirect infringement of the '048 Patent was also willful, as Nortrup informed Toyota of its infringement on April 19, 2022 (*see* **Exhibit G**) but Toyota refused to cease its infringement or negotiate a license to practice the '048 Patent.

44. Upon information and belief, Toyota has many dealers and end user customers who directly infringed the '048 Patent. As a result of Toyota's infringement and its dealers' and customers' infringement of the '048 Patent, Nortrup has suffered monetary damages and seeks recovery in an amount adequate to compensate it for Toyota's infringement.

### COUNT III:  DIRECT INFRINGEMENT OF THE '131 PATENT

45. Nortrup incorporates by reference each of the above paragraphs as if fully restated herein.

46. Toyota directly infringed under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, one or more claims of the '131 Patent by making, using, selling, offering to sell, and/or importing the Accused Vehicles within the United States.

47. A detailed infringement analysis demonstrating how the Accused Vehicles practice each and every limitation of claim 1 of the '131 Patent, either literally or under the doctrine of equivalents, is provided in **Exhibits E and F**.

48. Toyota's direct infringement of the '131 Patent was also willful, as Nortrup informed Toyota of its infringement on March 8, 2024 (*see* **Exhibit H,** *see also* **Exhibit G**) but Toyota refused to cease its infringement or negotiate a license to practice the '131 Patent.

49. As a result of Toyota's direct infringement of the '131 Patent, Nortrup has suffered monetary damages.

### COUNT IV:  INDIRECT INFRINGEMENT OF THE '131 PATENT

50. Nortrup incorporates by reference each of the above paragraphs as if fully restated herein.

51. Toyota actively induced infringement of the '131 Patent by its regional Toyota and Lexus dealerships across the country. Each of these dealerships directly infringed by selling, offering to sell, and/or using (e.g., leasing) new and used Accused Vehicles, and Toyota actively induced this infringement in a variety of ways, for example by supplying new Accused Vehicles to the dealerships to be sold/leased, offering its Toyota Certified and L/Certified By Lexus Programs to certify used vehicles for sale, providing training and technical support to regional sales teams to sell Accused Vehicles, providing marketing and advertising services, etc.

52. Toyota further actively induced infringement of the '131 Patent by its customers that purchased the Accused Vehicles under 35 U.S.C. § 271(b). *See* **Exhibits E, F**. By using Apple CarPlay or Android Auto in the Accused Vehicles in connection with a navigation app such as Apple Maps, Google Maps, or Waze, Toyota's customers put the invention into service, i.e., controlled the system as a whole and obtained benefit from it. Indeed, by navigating using Apple CarPlay or Android Auto in the Accused Vehicles, Toyota's customers benefitted from each claimed component of the invention, for example because each claimed component contributed to augmenting the user's driving and navigating experience, providing a prominent and convenient user interface and helpful routing based on real-time traffic conditions.

53. Toyota's sale, support, instruction, and promotion of the Accused Vehicles to customers and prospective customers, especially with respect to the Apple CarPlay and Android Auto features of these Accused Vehicles, constitutes active encouragement and instruction to infringe the '131 Patent. For example, Toyota's publication of its "How to Set Up Apple CarPlay" YouTube video, published in 2021, instructs customers that "Apple CarPlay now supports third party navigation apps like Google Maps and Waze, allowing even more ways to get to where you're going." (*How to Set Up Apple CarPlay | Toyota*, TOYOTA USA (2021),

*available at* https://www.youtube.com/watch?v=AU_dA2V0Qig.) That video further states, "It is recommended to choose Always Enable, which will automatically activate Apple CarPlay each time a compatible iPhone is connected through the USB media port." (*Id. See also, e.g.*, *How-To Connect to Apple CarPlay | Lexus*, LEXUS (2019), *available at* https://www.youtube.com/watch?v=N6J3aqxrBJE.) Toyota published similar instructional materials for Android Auto. (*See, e.g.*, *How to Use Android Auto in Your Toyota | Toyota*, TOYOTA USA (2020), *available at* https://www.youtube.com/watch?v=e7QqzkTCQEU; *How To Set Up Android Auto | Toyota*, TOYOTA USA (2020), *available at* https://www.youtube.com/watch?v=gO3vNPDvnTs; *How-To Set Up Android Auto | Lexus*, LEXUS (2019), *available at* https://www.youtube.com/watch?v=GJ7nyUb-U6c.)

54.     Toyota has had knowledge of the '131 Patent, of its infringement of the '131 Patent, of its dealers' infringement of the '131 Patent, and of its customers' infringement of the '131 Patent at least as of March 8, 2024, when Nortrup sent it a patent infringement notice letter explicitly accusing it of infringement. (*See* **Exhibit H,** *see also* **Exhibit G**.)

55.     Toyota's indirect infringement of the '131 Patent was also willful, as Nortrup informed Toyota of its infringement on March 8, 2024 (*See* **Exhibit H,** *see also* **Exhibit G**) but Toyota refused to cease its infringement or negotiate a license to practice the '131 Patent.

56.     Upon information and belief, Toyota has many dealers and end user customers who directly infringed the '131 Patent. As a result of Toyota's infringement and its dealers' and customers' infringement of the '131 Patent, Nortrup has suffered monetary damages and seeks recovery in an amount adequate to compensate it for Toyota's infringement.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Nortrup respectfully requests the following relief:

A.  A judgment in favor of Nortrup that Toyota infringed, either literally and/or under the doctrine of equivalents, both directly and indirectly, each of the Asserted Patents;

B.  A finding that Toyota's infringement was willful;

C.  An award of damages resulting from Toyota's acts of infringement in accordance with 35 U.S.C. § 284;

D.  An accounting of damages incurred by Nortrup from six years prior to the date this lawsuit was filed through the entry of a final, non-appealable judgment;

E.  Pre- and post-judgment interest on such damages to Nortrup;

F.  A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Nortrup reasonable attorneys' fees against Toyota.

G.  Any and all other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Nortrup respectfully requests a trial by jury on all issues triable thereby.

DATED this 31st day of March, 2025.

RESPECTFULLY SUBMITTED,

By: */s/ David K. Ludwig*
David K. Ludwig
Georgia Bar No. 616971
Steven G. Hill
Georgia Bar No. 354658
Hill, Kertscher & Wharton, LLP
3625 Cumberland Blvd., SE
Suite 1050
Atlanta, Georgia 30339-6406
Tel.: (770) 953-0995

                Email: dludwig@hkw-law.com
                Email: sgh@hkw-law.com

                ***Counsel for Plaintiff Edward Nortrup***