# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

**EDWARD NORTRUP**,

    *Nortrup*,

      v.

**TOYOTA MOTOR CORPORATION, et al.**,

    *Toyota*.

Case No. 4:25-cv-00328-SDJ

**JURY TRIAL DEMANDED**

<br><br>

**<u>TOYOTA DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF</u>**

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ....................................................................................................................1

I.    OVERVIEW OF THE ASSERTED PATENTS .................................................................5

    A.    The '048 Patent ................................................................................................6

    B.    The '131 Patent ................................................................................................7

    C.    The Level of Ordinary Skill in the Art ...........................................................7

II.    DISPUTED CLAIM TERMS ..........................................................................................7

    A.    "an in-vehicle data receiver forming a part of a vehicle configured to receive…an estimated roadway traffic condition" ('048 Patent, Claims 1, 3, 4, 13, 15) / "a data receiver configured to receive … an estimated roadway traffic condition" ('048 Patent, Claim 17) ...........................................................................................7

        1.    The "data receiver" terms are and subject to § 112, ¶ 6. ............................8

        2.    The specification of the '048 patent fails to disclose sufficient corresponding structure for the claimed "data receiver". .........................14

        3.    "Configured to" requires more than mere capability................................14

    B.    "a current location of a first cell phone, as determined by the first cell phone" ('048 Patent, Claims 1, 17) / "a current location" ('048 Patent, Claims 13, 15) ...15

    C.    "a computer mounted to said vehicle and configured to receive" / "said computer being configured to communicate" / "said computer … configured to cause … thereby causing…" ('131 Patent, Claims 1, 11) ...................................................24

        1.    The "computer" terms are written in means plus function format" and subject to § 112, ¶ 6. ..............................................................................25

        2.    The specification of the '131 patent fails to disclose sufficient corresponding structure for the claimed "computer"................................27

    D.    "said cell phone interface being configured … thereby causing …" ('131 Patent, Claim 24) ...............................................................................................28

    E.    "a self-determined location of said cell phone" ('131 Patent, Claims 1, 11, 24, 29) ....................................................................................................................30

CONCLUSION.....................................................................................................................30

## TABLE OF AUTHORITIES

**Cases**

*Advanced Ground Info. Sys., Inc. v. Life360, Inc.*,
  830 F.3d 1341 (Fed. Cir. 2016) ................................................................... 8

*Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*,
  No. CV 07-8108, 2012 WL 12877984 (C.D. Cal. June 18, 2012) .......................... 13

*Apex Inc. v. Raritan Computer, Inc.*,
  325 F.3d 1364 (Fed. Cir. 2003) .................................................................. 29

*Aspex Eyeware, Inc. v. Marchon Eyewear, Inc.*,
  672 F.3d 1335 (Fed. Cir. 2012) .................................................................. 15

*AstraZeneca AB v. Mylan Pharm. Inc.*,
  19 F.4th 1325 (Fed. Cir. 2021) .................................................................. 19

*B. Braun Med., Inc. v. Abbott Labs*,
  124 F.3d 1419 (Fed. Cir. 1997) .................................................................. 14

*Cobblestone Wireless LLC v. T-Mobile USA, Inc.*,
  2:22-CV-00477, Dkt. No. 131 (E.D. Tex. May 29, 2024) ...................................... 9

*Dyfan, LLC v. Target Corp.*,
  28 F.4th 1360 (Fed. Cir. 2022) ............................................................. 14, 26

*Egenera, Inc. v. Cisco Sys., Inc.*,
  972 F.3d 1367 (Fed. Cir. 2020) .................................................... 8, 12, 25, 29

*Eye Therapies, LLC v. Slayback Pharma, LLC*,
  141 F.4th 1264, 1269 (Fed. Cir. 2025) ......................................................... 18

*Fiber LLC v. Ciena Corp.*,
  2019 WL 6216149 (Fed. Cir. 2019) ............................................................... 8

*Huawei Techs. Co. v. T-Mobile US, Inc.*,
  No. 2:16-CV-56-JRG, 2017 WL 2267304 (E.D. Tex. May 24, 2017) ......................... 13

*Ignite USA, LLC v. CamelBak Prods.*, LLC,
  709 F. App'x 1010 (Fed. Cir. 2017). ............................................................ 30

*Intellectual Ventures II LLC v. BITCO Gen. Ins. Corp.*,
  No. 6:15-CV-59, 2016 WL 125594 (E.D. Tex. Jan. 11, 2016) ............................... 29

*Intelligent Automation Design, LLC v. Zimmer Biomet CMF and Thoracic, LLC,*
2020 WL 486830 (Fed. Cir. 2020) ........................................................................... 8

*Inventio AG v. ThyssenKrupp Elevator Americas Corp.,*
649 F.3d 1350 (Fed. Cir. 2011) ........................................................................ 26, 27

*Juniper Networks, Inc. v. Swarm Tech. LLC,*
No. 2023-1980, 2025 WL 1793722 (Fed. Cir. June 30, 2025) .............................. 22

*Mobile Telecommunications Techs., LLC v. Google Inc.,*
No. 2:16-CV-2, 2016 WL 7338398 (E.D. Tex. Dec. 19, 2016).............................. 13

*Nevro Corp. v. Boston Sci. Corp.,*
955 F.3d 35 (Fed. Cir. 2020).................................................................................. 15

*Nystrom v. TREX Co.,*
424 F.3d 1136 (Fed. Cir. 2005) .............................................................................. 22

*Roku, Inc. v. Universal Elecs., Inc.,*
No. 2023-1019, 2024 WL 3042701 (Fed. Cir. June 18, 2024) .............................. 22

*Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.,*
948 F.3d 1342 (Fed. Cir. 2020)........................................................................... 2, 27

*SIPCO, LLC v. ABB, Inc.,*
No. 6:11-CV-48, 2012 WL 3112302 (E.D. Tex. July 30, 2012) ........................... 15

*Stellar, LLC v. Motorola Sols., Inc.,*
No. 4:23-CV-750-SDJ, Dkt. No. 169 (E.D. Tex. Apr. 21, 2025) .................... passim

*Tech. Props. Ltd. LLC v. Huawei Techs. Co., Ltd.,*
849 F.3d 1349 (Fed. Cir. 2017) .............................................................................. 19

*Williamson v. Citrix Online, LLC,*
792 F.3d 1339 (Fed. Cir. 2015)........................................................................ passim

*WSOU Invs. LLC v. Google LLC ("WSOU I"),*
No. 2022-1064, 2023 WL 6531525 (Fed. Cir. Oct. 6, 2023).............................. 8, 12

*WSOU Invs. LLC v. Google LLC* ("*WSOU II*"),
2023 WL 6889033 (Fed. Cir. Oct. 19, 2023) .................................................. passim

*XR Commc'ns, LLC v. ARRIS Sols., Inc.,*
2023 WL 3529830 (Fed. Cir. May 18, 2023)...................................... 8, 11, 12, 25

**Statutes**

35 U.S.C. § 112, ¶6 ............................................................................................ passim

## INTRODUCTION

Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Sales, U.S.A., Inc., and Toyota Motor Engineering & Manufacturing North America, Inc. (collectively, "Toyota") submit this responsive claim construction brief regarding the proper construction of certain disputed terms appearing in the claims of U.S. Patent Nos. 11,307,048 ("the '048 patent") and 11,874,131 ("the '131 patent") (collectively, the "Asserted Patents").

The Asserted Patents are an effort by Plaintiff ("Plaintiff" or "Nortrup") to capitalize on the innovations, product development, and marketplace success of others. Their applications were filed *fifteen* and *nineteen* years *after* their earliest claimed priority date. Nortrup thus kept alive a family of patent applications for nearly two decades after filing provisional applications in 2004, then applied for the Asserted Patents in 2019 and 2023 with claims directed at an "in-vehicle" devices that were barely even mentioned in passing in the disclosures that became the common specification for the Asserted Patents. The evident plan was to prosecute patent claims to cover Apple's CarPlay and Google's Android Auto applications, which had been developed in the ensuing decade or so, in order to assert them against automakers like Toyota.

Nortrup's plan must fail for multiple reasons, two of which are particularly relevant to the claim construction issues now before the Court:

**First,** Nortrup cannot have it both ways. His theory of the case is that he invented a *brand-new type of device*, an in-vehicle "data receiver" (claimed in the '048 patent) or "computer"/"cell phone interface" (claimed in the '131 patent) which he claims perform detailed functions beyond anything known in the state-of-the-art in 2004. Dkt. 1 (Complaint) at ¶¶ 6-7, 10-11. Yet, for purposes of claim construction, and in an effort to avoid the requirements of 35 U.S.C. § 112, ¶6, Nortrup argues that the claimed "data receiver"/"computer"/ "interface" terms of the Asserted Patents would have been understood by a 2004 POSITA as "conventional,"

"standard," and "known" devices by nothing more than those generic terms. *See, e.g.*, Nortrup Br. at 8-9, 18-20, 22, 24, 26-27. This contradiction is untenable. Moreover, it is contrary to the case law Nortrup seeks to rely on in resisting § 112, ¶6 treatment of those terms – in particular, this Court's decision in *Stellar, LLC v. Motorola Sols., Inc.*, No. 4:23-CV-750-SDJ, Dkt. No. 169 (E.D. Tex. Apr. 21, 2025) and Federal Circuit decisions like *WSOU Invs. LLC v. Google LLC* ("*WSOU II*"), 2023 WL 6889033 (Fed. Cir. Oct. 19, 2023), discussed in *Stellar*.

Both *Stellar* and *WSOU II* – like numerous other Federal Circuit precedents – make clear that a patent holder cannot avoid § 112, ¶6 by arguing simply that claim language is not a "nonce word" but instead connotes *some* structure. Instead, § 112, ¶6 also applies if it is shown that the claim "recites function without reciting *sufficient structure to perform that function*." *Stellar* at *9 (emphasis added) (quoting *Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1354-55 (Fed. Cir. 2020)); *WSOU II* at *3; *accord, e.g.*, *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (*en banc*). It is critical, therefore, to look at the entirety of the recited functions to determine if a POSITA in 2004-05 would have known what structure was required to perform the full function. The functions at issue here include, for example:

- "to receive a roadway map of an area proximate a current location of a first cell phone, as determined by the first cell phone, and a route from the current location to a destination based, at least in part, on an estimated roadway traffic condition," in the '048 patent claims; or

- "to cause said cell phone to transmit a self-determined location of said cell phone and a destination signal based on said user input over a cellular network to a networked computer facility; thereby causing said cell phone to receive map data from said networked computer facility over said cellular network, and to cause said map data to be transmitted from said cell phone to said computer such that a map based on said map data is displayed on said display and shows said self-determined location of said cell phone, said route and said traffic conditions along said route," in the '131 patent, claim 11; or

- "to cause said cell phone to transmit a self-determined location of said cell phone, thereby causing said cell phone to receive map data, and to cause said map data to be transmitted from said cell phone to said computer," in the '131 patent, claim 24.

These are not functions a POSITA in 2004-05 would have understood as being performed by any conventional or known "receiver," "computer," or "interface" – indeed, they are at the heart of what Nortrup claims to have *invented*. That is why the claims of the Asserted Patents – like the "processor" terms of the '045 patent in *WSOU II* – are properly treated as means-plus-function claims despite including a non-nonce "data receiver"/"computer"/"interface" term.

Nortrup and his expert witness never grapple with the full recited functions or the legal requirement that a claim is subject to § 112, ¶6 if it "recites function without reciting sufficient structure for performing that function." *Williamson*, 792 F.3d at 1348 (citation omitted). Yet the testimony of *both* parties' expert witnesses confirms that there was not any conventional or otherwise known "data receiver"/"computer"/"interface" that would have connoted sufficient structure to a POSITA to perform the recited functions of those terms.  Dkt. No. 32-4 and Ex. A attached hereto ("Shoemake Decl."), ¶¶38-48, 54-66; Dkt. No. 32-3 ("Bayen Decl."), ¶¶36-38 (noting "multiple technology shifts" following 2004-05 that made possible "the very model described in the Asserted Patents").

Moreover, Nortrup's Opening Brief devotes only a single paragraph to the common specification of Asserted Patents (*see* Nortrup Br. at 9), despite the fact that *Stellar* and Federal Circuit precedent instruct that the intrinsic record is key to determining whether claim terms connote sufficient structure to perform functions they recite as part of "step one" of the *Williamson* "two-step inquiry". *Stellar*, Dkt. 169 at 9, 21-22; *WSOU II*, at *4-*5. And Nortrup's cursory discussion of the specification ignores that the term "data receiver" itself is *never used in the written description*, and even the term "receiver" is used there only a handful of times in passing and in the most generic of ways. The principal specification cite relied on by Nortrup is Fig. 35 and the description of that figure at col. 16:56-58:



FIG. **35** illustrates a vehicle with transmitter and a vehicle
with a receiver according to the principles of the present
invention.

Fig 35 depicts "a second vehicle 3502B [that] includes receiver" 3510," col 28:36-40, with no
further description of empty circle 3510. It is hard to imagine a specification providing less
"structural guidance," *Stellar*, at *22 (quoting *WSOU II*, at *4), particularly for a generic term
like "receiver"— it literally could be "any structure" (*id.*) capable of receiving any kind of data.
It is the proverbial "black box." Both the extrinsic and intrinsic records thus confirm that Nortrup
cannot avoid § 112, ¶6 under Federal Circuit precedent and this Court's prior decisions.

Finally, Nortrup does not even attempt to defend the claims' validity if they are found to
be subject to § 112, ¶6, under "step two" of the *Williamson* inquiry. The Opening Brief does not
identify anything that corresponds to any recited function at issue here, thereby concedes that the
claimed "receiver," "computer," and "interface" are nowhere described in the specification. This
renders all of the "data receiver"/"computer"/ "interface" terms indefinite under § 112, ¶6.

***Second***, Nortrup advances a reading of "self-determined location" of a cell phone (and
similar language) that finds no support in the patents and directly contradicts repeated, clear
arguments Nortrup made during prosecution to distinguish prior art. Nortrup's proposed
construction would encompass systems where the cell phone uses vehicle location data from an

in-vehicle navigation system in determining the phone's *own* location. Nortrup points to no embodiments in the specification disclosing this counter-intuitive arrangement. During prosecution of *both* Asserted Patents, Nortrup repeatedly emphasized that his inventions claimed a cell phone determining its location *without* "rel[ying] on an in-vehicle integrated GPS to provide a location of a vehicle" unlike prior art systems where the vehicle transmitted its GPS data to the cell phone. The claims, specification, and prosecution history all are in accord with Toyota's construction. And, even though Toyota need not show an unmistakable surrender of claim scope to prevail on this issue, the prosecution history here would meet that standard: Nortrup's claim amendments and arguments, relied upon by the examiner, leave no ambiguity.

# I.    OVERVIEW OF THE ASSERTED PATENTS

The Asserted Patents share a common specification, which generally relates to a system and method for providing information to travelers using location systems. '048 Patent, Abstract; '131 Patent, Abstract. As indicated above, Nortrup applied for the Asserted Patents fifteen and nineteen years after the asserted priority dates for the claimed inventions.



*See* Defendants' Technology Synopsis at slide 4. The bulk of the claims in applications for the patent family were directed to purported inventions that related to portions of a traffic information collection and distribution system that had little or no relationship to any "in-vehicle" device that received information from or transmitted information to a cell phone. That explains why the common specification says almost nothing about the "data receiver"/ "computer"/"interface" claims of the Asserted Patents. Of note, the parent and great-grandparent patent of the Asserted Patents, the '028 patent (filed in 2015), claimed a "computer program product" that performed the same basic functions as the in-vehicle "data receiver" of the '048 patent is claimed to be "configured to" perform. And the Asserted Patents added claims directed to in-vehicle devices (rather than a "computer program") configured to perform those functions. All claims of the '028 patent were found unpatentable as obvious over the prior art by a PTAB decision in November 2024; Nortrup ultimately dropped his appeal of that decision. *See* Ex. B, IPR2023-009944 Final Written Decision; Ex. C, Order Granting Nortrup's Motion to Voluntary Dismiss Appeal CAFC-25-1471.[1]

> ### A. The '048 Patent

The '048 patent's claims generally recite an in-vehicle "data receiver" that is configured to receive a map proximate to the current location of a cell phone, *as determined by said cell phone*, and a route from the current location to a destination. *See, e.g.*, '048 patent, cl. 1. The route is based at least in part on an estimated roadway traffic condition, which is estimated based

---

[1] Nortrup has not argued, nor could it reasonably, that because the Patent Office has found all claims of the '028 patent unpatentable as obvious that the "data receiver"/"computer"/ "interface" terms of the Asserted Patents connote structures known to POSITAs at the time of the purported invention. The fact that invalidating prior art has now been found to render obvious the '028 patent – and likewise should invalidate the parallel claims of the Asserted Patents – does not establish for purposes of § 112, ¶6 that structures sufficient to perform recited functions were "conventional" or otherwise generally known at the time of the purported inventions.

on the locations of other cell phones determined to be moving vehicles. *Id.* The in-vehicle system further includes a computer display to display the map and route.

### B.     The '131 Patent

The '131 patent's claims recite many similar elements to the claims of the '048 patent, however, the two patents' claims have some differences. The '131 patent's claims generally recite an in-vehicle computer system with a "computer" that receives user input of a destination. *See*, *e.g.*, '131 patent, cl. 1. The computer communicates directly with a separate cell phone and "causes" the cell phone to transmit the cell phone's *self-determined location* to a networked computing facility which thereby "causes" the networked computing facility to transmit map data back to the cell phone. *Id*. The map data includes an indication of the cell phone's location, a route from the cell phone's location to the user-input destination, and traffic conditions along the route based on the locations of other cell phones sent to the networked computer facility by the other cell phones. *Id*. The map data received by the cell phone is transmitted from the cell phone to the in-vehicle computer and displayed on a vehicle-mounted display. *Id*.

### C.     The Level of Ordinary Skill in the Art

There is no disagreement on this point. *See* Shoemake Decl., ¶35; Nortrup Br. at 7.

## II.     DISPUTED CLAIM TERMS

### A.     "data receiver forming a part of a vehicle configured to receive…an estimated roadway traffic condition" ('048 patent, claims 1, 3, 4, 13, 15, 17)

| Toyota's Construction | Nortrup's Construction |
|---|---|
| Phrase is subject to Pre-AIA 35 USC 112 ¶6. | Plain and ordinary meaning. |
| Function: "receive a roadway map of an area proximate a current location of a first cell phone, as determined by the first cell phone, and a route from the current location to a destination based, at least in part, on an estimated roadway traffic condition." | "data receiver" – plain and ordinary meaning, i.e., a device or component that receives data or signals, for example in the form of electromagnetic radiation or electrical impulses, from one or more other devices or components |
| Structure: None; indefinite. | |

7

| "configured to" means "designed/arranged/programmed to"; not merely "capable of" | "configured to" – plain and ordinary meaning, i.e., designed, arranged, programmed, equipped, or otherwise set up to perform (a stated function) |
|---|---|

### 1.    The "data receiver" terms are subject to § 112, ¶ 6.

Even in the absence of the word "means," § 112 ¶6 applies if a claim term "fails to 'recite sufficiently definite structure' *or else recites 'function without reciting sufficient structure for performing that function*.'" *Williamson*, 792 F.3d at 1349 (emphasis added). While there is a presumption against means-plus-function claiming in the absence of that word, "[t]his presumption, however, does not permit patentees to freely engage in functional claiming while circumventing § 112(f) simply by avoiding the word 'means.'" *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1372-73 (Fed. Cir. 2020). The presumption is "not 'strong'" and "a challenger need not show that the limitation is 'essentially … devoid of anything that can be construed as a structure.' Rather, a challenger need only show that the structure is not 'sufficient.'" *Id.*, 972 F.3d at 1373 (quoting *Williamson*, 792 F.3d at 1349).  Since *Williamson*, many Federal Circuit decisions have construed terms other than "means" as invoking means-plus-function terms, notwithstanding the presumption, even when the claim does not use a "nonce" word like "unit" or "module."  *See, e.g.*, *WSOU II*, 2023 WL 6889033 at *4 ("processor"); *WSOU Invs. LLC v. Google LLC ("WSOU I")*, No. 2022-1064, 2023 WL 6531525, at *3-*6 (Fed. Cir. Oct. 6, 2023) ("processor"); *XR Commc'ns, LLC v. ARRIS Sols., Inc.*, 2023 WL 3529830, at *2 (Fed. Cir. May 18, 2023) (nonprecedential) ("search receiver logic"); *Egenera*, 972 F.3d at 1372-1375 ("logic"); *Intelligent Automation Design, LLC v. Zimmer Biomet CMF and Thoracic, LLC*, 2020 WL 486830, at *2 (Fed. Cir. 2020) (nonprecedential) ("control circuit"); *Fiber LLC v. Ciena Corp.*, 2019 WL 6216149, at *4 (Fed. Cir. 2019) (nonprecedential) ("control"); *Advanced Ground Info. Sys., Inc. v. Life360, Inc.*, 830 F.3d 1341, 1347-48 (Fed. Cir. 2016) ("symbol generator").

It is undisputed that the "data receiver" claim terms of the '048 patent recite functions. *See* Nortrup Br. at 11, 13; Bayen Decl., ¶¶ 40, 44-46, 48, 56. Indeed, Nortrup's proposed construction for "configured to" is something that is set up to perform "(a stated function)." Nortrup Br. at 8.   The '048 patent's claims recite a "data receiver" configured to perform these functions: (1) receive "a roadway map of an area proximate a current location of a first cell phone;" (2) where that location is "determined by the first cell phone;"[2] (3) and receive a route from the current location to a destination based, at least in part, on an estimated roadway traffic condition."   Shoemake Decl., ¶ 39.   The presumption that § 112 ¶6 does not apply therefore must "stand or fall according to whether one of ordinary skill in the art would understand the claim with the functional language to denote sufficiently definite structure or acts for performing the function in the context of the entire specification." *Cobblestone Wireless LLC v. T-Mobile USA, Inc.*, 2:22-CV-00477, Dkt. No. 131 at 10 (E.D. Tex. May 29, 2024).

Here, the claimed "data receiver" does not recite a sufficiently definite structure for performing the claimed functions. As Dr. Shoemake explains, at the time of the inventions claimed by Nortrup, a POSITA would have understood "data receiver" to be merely a generic reference to any structure capable of receiving data. Shoemake Decl., ¶41. This could have been hardware, software, or both, and does not refer to any particular structure or class of structures. *Id*. The POSITA would not have been able to discern a definite structure to perform the functions recited in those data receiver limitations. *Id.*

Nortrup does not dispute Dr. Shoemake's testimony as to what a POSITA would understand a "data receiver" to be; in fact, it is essentially the same as Nortrup's own stated

---

[2] As discussed in Section II.B, "current location" in all asserted claims should be construed such that the location is "determined by the first cell phone"; regardless, the dispute over "current location" does not change that all claims recite functions for the "data receiver."

understanding of the plain and ordinary meaning of "data receiver" as "a device or component that receives data or signals" in some form from "one or more other devices or components." Nortrup Br. at 8. Thus, under Nortrup's definition, a "data receiver" is defined purely by its function and would encompass any device that receives data or signals. This understanding is reinforced by the dictionary definitions cited by Nortrup (many of which Toyota identified), which generally define "receiver" as something that accepts transmitted signals. *Id.* at 8-9.

The '048 patent does not impart any different meaning or further structural understanding to "data receiver." The specification barely mentions any in-vehicle data receiver and those mentions do not impart any structural connotation to the term. As discussed above, the '048 patent's only discussion of an in-vehicle data receiver relates to Fig. 35, which is described as a "a vehicle with [a] transmitter" transmitting "information relating to its performance [(e.g. information such as speed, acceleration, deceleration, braking or temperature of the first vehicle)]," to "a vehicle with a receiver." *Id.*; col. 28:35-43. The Figure shows a stick-figure vehicle 3502B with a hollow circle 3510 identified as a "receiver," with nothing more. Neither this portion of the '048 specification nor any other portion would provide a POSITA with any "structural guidance." *See* Shoemake Decl., ¶¶42-43

The question then is whether a generic "data receiver" is sufficient structure to perform the claimed functions, and all evidence shows that the answer is a resounding "no."  The strongest evidence may come from Nortrup and its expert witness, who repeatedly characterize the patent as disclosing a "conventional" or "known" receiver. Dr. Bayen opines that in the context of the specification "an in-vehicle 'data receiver' is exactly the sort of *known* receiving hardware a POSITA would expect to exist … [n]othing in the specification suggests that 'receiver'" is "divorced from *known* hardware." Bayen Decl., ¶57; *see also id.* at ¶49 ("A

POSITA would naturally understand that the 'data receiver' encompasses *conventional* receiver components"); ¶50 (the patent presupposes "*conventional* receiver functionality"); Nortrup Br. at 9 ("data receiver" "encompasses known receiver components"). But the entire point of the claimed inventions is that the "data receiver" performs functions that were *not* "conventional" data receiver functions, a position Nortrup has emphasized during prosecution (Ex. E at 336-40), in his complaint (Dkt. 1 at ¶¶ 6-7, 10-11), and in his expert's declaration (Bayen Decl. ¶33, 38, explaining that in 2004-2005 vehicle navigation systems were "typically self-contained" and "were not cloud-connected and did not utilize real-time, crowd-sourced traffic data or portable computing devices as part of the navigation process.") Dr. Shoemake agrees that a POSITA would not understand a generic "data receiver" to be sufficient structure to perform the claimed "compound, technical specific function[s]." Shoemake Decl., ¶¶38-41.[3]

Nortrup misstates the relevant legal question. Plaintiff argues that (a) "data receiver" is a structural component and (b) the functional language "does not erase structure." Nortrup Br. at 13; Bayen Decl. ¶56 (arguing that the functional language "does not negate the existence of structure"). The Federal Circuit recently explained exactly why Nortrup's argument is wrong in *XR Commc'ns*. There, the patentee argued that the court should "have asked only whether a POSITA would have understood 'search receiver logic' as structure—period" and not "whether a

---

[3] Dr. Shoemake's testimony supports both that the disputed terms fail to recite sufficiently definite structure under Step 1 of the § 112 ¶ 6, and also that the specification fails to disclose sufficiently definite structure under Step 2. Nortrup argues that Dr. Shoemake "conflated" the two steps of the § 112 ¶6 analysis when he observed that neither the claim limitations nor the '048 specification conveys "an algorithm or data-handling process." Nortrup Br. at 13 (citing Shoemake Decl., ¶ 41). But, as shown in the case law cited in this brief, it is appropriate – indeed required – to look to the patent's description of the claim term, including the surrounding claim language, to determine what structure is recited to perform the full recited functions. As Dr. Shoemake explained, for the "data receiver claims," that necessarily would include "an algorithm or data-handling process for accepting and processing location-specific mapping and routing information," making such a structure central to step 1 of the *Williamson* analysis. *Id.* ¶40.

POSITA would have understood 'search receiver logic' as a structure for updating said routing information" (the claimed function).  *XR Commc'ns*, 2023 WL 3529830 at *2. The Federal Circuit "disagree[d]," noting that the patentee's argument "fails to meaningfully reckon with this court's precedent" and holding that "the district court properly asked whether a POSITA would understand the disputed term not just as structure, but as sufficient structure for performing the claimed function." *Id.* at *2 (citing *Williamson*, 792 F.3d at 1348-49).

Nortrup has adopted the same flawed approach that the Federal Circuit rejected in *XR Commc'ns* and *Egenera*. Even assuming "data receiver" "connotes some possible structure in the form of software, firmware, or circuitry," Nortrup has not explained how that "amounts to *sufficient* structure for performing the [claimed] function." *See Egenera*, 972 F.3d at 1374 (emphasis in original). The intrinsic and extrinsic record establishes that "data receiver" is the paradigmatic "black box that captures any and all structures that fulfill the function, just as if 'means' were used." *WSOU I*,  2023 WL 6531525, at *4.

Nortrup relies on cases that address terms and contexts that are not analogous to those at issue here (Nortrup Br. at 1-4, 12-14), in particular this Court's recent decision in *Stellar*. The "data receiver" terms are unlike the "processor" terms in *Stellar* and in *WSOU II*'s '825 patent and instead are on all fours with the *WSOU II* Court's ruling that "processor" in the '045 patent invoked § 112 ¶6. For example, the specification of the patents in *Stellar* provided that the "processor is mounted on a printed circuit board" and recited various related hardware components including "a sensor, a memory coupled to the sensor, and a processor that stores data from the sensor in the memory." *Stellar*, Dkt. 169 at 24. In contrast, the '048 specification never uses the term "data receiver" – that term appears only in the claims – let alone provide any structural description or indication the term had a known meaning in the art as structure

sufficient to the perform its recited functions. Shoemake Decl., ¶¶42-43. Instead, like the specification of the '045 patent in *WSOU II*, the '048 specification treats the word receiver "so broadly as to generically be any structure that [receives] data." *WSOU II*, at *4.

Likewise, just because district courts have at times construed "receiver" or similar terms not to invoke § 112 ¶6 in *different* contexts and for *different* patents does not support the same result here.  Nortrup Br. at 12-14 (citing *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-CV-56-JRG, 2017 WL 2267304 (E.D. Tex. May 24, 2017); *Mobile Telecommunications Techs., LLC v. Google Inc.*, No. 2:16-CV-2, 2016 WL 7338398 (E.D. Tex. Dec. 19, 2016); *Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*, No. CV 07-8108, 2012 WL 12877984 (C.D. Cal. June 18, 2012). In *Huawei*, "the specification provide[d] a description of an exemplary structure of the claimed 'receiver'" and "contain[ed] descriptions of mobility management devices that are well-understood in the art, such as MMEs and SGSNs, performing the claimed functionality." 2017 WL 2267304 at 12-13. No such description is present here, and thus the intrinsic record provides no support for a position that a POSITA would understand "data receiver" as a defined structure sufficient to perform the recited functions of the '048 patent. Similarly, in *Mobile Telecommc'ns Techs.*, the surrounding parts of the claims "provide[d] context as to the 'inputs and outputs' and how a 'receiver' or 'transmitter' 'interacts with other components ... in a way that ... inform[s] the structural character of the limitation-in-question or otherwise impart[s] structure.'" 2016 WL 7338398 at *42. The claims of the '048 patent fail to provide such context to connote sufficiently definite structure. And *Alfred E Mann*, a pre-*Williamson* decision from another district, is easily distinguished because "the claim language viewed as a whole provides sufficient structure to make clear that the disputed claim term refers to a receiver of radio waves, as commonly understood by persons of ordinary skill in the art." 2012 WL 12877984 at *4.

13

### 2.    The specification of the '048 patent fails to disclose sufficient corresponding structure for the claimed "data receiver."

The "second step" in construing a § 112 ¶6 claim term is to determine "what structure, if any, disclosed in the specification corresponds to the claimed function." *Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1365 (Fed. Cir. 2022) (internal quotation omitted). Structure is "corresponding" for this purpose "only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim. This duty to link or associate structure in the specification to function is the quid pro quo for the convenience of employing" means-plus-function claiming. *B. Braun Med., Inc. v. Abbott Labs*, 124 F.3d 1419, 1424 (Fed. Cir. 1997). If the specification lacks corresponding structure necessary to perform the claimed functions, then the claim is invalid as indefinite. *Williamson*, 792 F.3d at 1351-52.

Nortrup does not even attempt to argue that the '048 patent discloses sufficient corresponding structure here, because its specification does not disclose *any* structure for the recited functions of the data receiver. Shoemake Decl., ¶¶42-48. As Dr. Shoemake explains, a POSITA would have understood the *claimed* "data receiver" to require a communication interface and an algorithm or data-handling process for accepting and processing location-specific mapping and routing information. *Id.*, ¶¶39-40. There are no such disclosures in the '048 patent. *Id.*, ¶¶42-43, 45-48. Indeed, rather than providing structure to perform the recited functions, the specification elaborates on the functions of various embodiments. *Id.* ¶44; *see also* '048 patent, 5:49-50, 5:58-60, 6:13-16, 9:2-7. For these reasons, the "data receiver" terms—and in turn all claims of the '048 patent—are invalid as indefinite.

### 3.    "Configured to" requires more than mere capability.

As explained above, the asserted claims of the '048 patent are indefinite and therefore there is no need for the Court to construe the term "configured to." If the Court does construe

"configured to," then Toyota agrees with Nortrup that the parties' proposed constructions for the term are substantively similar, except that Nortrup objects to Toyota's inclusion of "not merely capable of" at the end of its proposed construction. Nortrup Br. at 11. The proposed additional language would be helpful to the jury and consistent with Nortrup's own case law. *See* Nortrup Br. at 11; *Nevro Corp. v. Boston Sci. Corp.*, 955 F.3d 35, 41-42 (Fed. Cir. 2020) (construing "configured to" and requiring the device to be programmed to perform the recited function and not merely be capable of doing so); *Aspex Eyeware, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1349 (Fed. Cir. 2012) (construing "adapted to" to mean the claimed structures must be "designed or configured to accomplish the specified objective, not simply that they can be made to serve that purpose."). Nortrup also cites *SIPCO, LLC v. ABB, Inc.*, No. 6:11-CV-48, 2012 WL 3112302, at *11 (E.D. Tex. July 30, 2012), but there the court ruled that "[i]nterpreting 'configured to' as requiring only mere capability would eliminate any meaningful limits to the claims." *Id*. So too here. Consistent with *SIPCO*, and to avoid jury confusion, the Court should adopt Toyota's proposed construction and expressly state that the claimed "data receiver" is not "configured to" perform the recited functions if it is merely capable of performing them.

**B.    "a current location of a first cell phone, as determined by the first cell phone" ('048 patent, cls. 1, 17) / "a current location" ('048 patent, cls. 13, 15)**

| Toyota's Construction | Nortrup's Construction |
|---|---|
| "a current location of a first cell phone, as determined by the first cell phone without use of an in-vehicle integrated navigation system" | Plain and ordinary meaning. "current location" – plain and ordinary meaning, i.e., present location. |

The dispute is whether the '048 patent claims are broad enough to cover systems using an in-vehicle navigation system in determining the claimed "current location of a first cell phone." The claim language and specification confirm they are not. And any doubts are resolved by the prosecution history, where Nortrup clearly distinguished his claimed current location "as

determined by the first cell phone" from systems that use or rely on an in-vehicle integrated navigation system. The amendments and statements highlighted in Nortrup's brief, which the Patent Office expressly relied upon in allowing *all claims* of the '048 patent, are not subject to any other reasonable interpretation. The Court should adopt Toyota's construction and reject Nortrup's improper attempt to cover subject matter he told the Patent Office and the public were not within the scope of his claimed inventions.

Many of Nortrup's arguments attack a straw man. Toyota is *not* arguing that the claimed "in-vehicle computer system" or the vehicle itself cannot have its own GPS or navigation system. *Contra* Nortrup Br. at 15-16; Bayen Decl., ¶¶66, 68. That is, a system that meets the claim language would not avoid infringement by adding a separate GPS or navigation system to the vehicle. But the claims do require that the "in-vehicle data receiver" is "configured to receive a roadway map of an area proximate a current location of a first cell phone, as determined by the first cell phone." A vehicle could have its own GPS system, but to practice the claims that GPS system cannot be used to determine the current location of a first cell phone.

Toyota's construction is rooted in the express language of the claims. Claim 1 of the '048 patent does not recite just "a current location of a first cell phone," but specifies that the location is "determined by the first cell phone." A POSITA would have understood this language was intended to distinguish the claimed invention from the many systems that determined a location via an in-vehicle navigation system. Shoemake Decl., ¶50. Supporting this understanding of the claim language, the specification contemplates alternative sources of location information. One is a "cell phone … equipped with a GPS locating facility." '048 patent, 20:37-39; Shoemake Decl., ¶¶50-51. Another is a cell phone's location determined by an external system, such as triangulation-based location determination. '048 patent, 8:3; 20:28–30; Shoemake Decl., ¶51.

Yet another is a vehicle that determines its own location via a GPS chip. '048 patent, 20:37-39, 34:22-23; 46:47-52; 47:53-56; Shoemake Decl., ¶51.

Nortrup admits that its supposed "plain meaning" construction would include a system in which a vehicle provides "in-vehicle GPS data" to the phone. Bayen Decl., ¶63; Nortrup Br. at 16-17. Nortrup's position, in fact, would allow the phone to receive a GPS location from a vehicle navigation system and use that as the cell phone's location, which conflicts with the claims and specification. First, a vehicle determining its location and providing that location to a cell phone would be a location determined by the vehicle, not the cell phone. Shoemake Decl., ¶52. Second, the resulting position would be that of the vehicle, not the cell phone. *Id.*

The following analogy illustrates how Nortrup's interpretation conflicts with the ordinary meaning of "as determined by the first cell phone." For example, if a teacher asked a student John for "the solution to a calculus problem, as determined by you," it would be readily understood that John would not be complying with the teacher's instruction if John asked Jane to solve the problem, and Jane handed John the answer. That would be so even if John looked at Jane's answer and "determined" that he agreed with it and therefore would adopt it as his own.

Nortrup and its expert witness point to *no* disclosure in the patent in which a cell phone determines its *own* location by use of an in-vehicle integrated navigation system. They point to a passage describing "*in-vehicle* mapping/nav embodiments." Bayen Decl., ¶64 (emphasis added); Nortrup Br. at 16 (both citing '048 patent, 19:16-21). This passage is describing Figure 3, which depicts a "mobile mapping facility 302 in an automobile 300" ('048 patent, 18:65-66), not a cell phone. Bayen and Nortrup also cite a passage describing Figure 4, which similarly depicts a vehicle facility that is connected to a "server computing facility." Nortrup Br. at 16; Bayen Decl., ¶64 (both citing '048 patent, 19:35-39); '048 patent, 19:22-28. Neither passage describes an in-

vehicle system communicating with a cell phone. Regardless, even if these passages could be applied to the claims, nothing in them suggests that a device which uses an "external facility" to determine its location would be considered to have determined its *own* location.

Any question as to whether the claims permit the use of an in-vehicle navigation system for the cell phone to determine its own location is resolved by the prosecution history. As a preliminary matter, Nortrup is incorrect in arguing that the prosecution history "needs" to supply a "'clear and unmistakable' disclaimer" for the Court to adopt Toyota's construction. *See* Nortrup Br. at 16. The Court may "employ the prosecution history to inform the claim construction" even if the applicant's representations "do not rise to the level of unmistakable disavowal." *Eye Therapies, LLC v. Slayback Pharma, LLC*, 141 F.4th 1264, 1269, 1271 n.5 (Fed. Cir. 2025) (internal quotation omitted). In *Eye Therapies*, for example, the Federal Circuit relied on an applicant's arguments contrasting its amended claims from the prior art to adopt an "atypical," and narrower, meaning" of the phrase "consisting essentially of." *Id.* at 1269. The Federal Circuit reached this conclusion even though it explicitly noted that it was *not* applying prosecution history estoppel or finding that the statements constituted unmistakable disavowal. *Id.* at 1271 n.5. As the Federal Circuit recognized, "an applicant's amendment accompanied by explanatory remarks can define a claim term by demonstrating what the applicant meant by the amendment." *Id.* at 1269 (internal quotation omitted).

Here, the ordinary meaning of the claims in view of the specification align with Toyota's construction, and Nortrup's amendments and statements during prosecution likewise support Toyota's construction. The Court must consider that prosecution history, because "any explanation, elaboration, or qualification presented by the inventor during patent examination is relevant, for the role of claim construction is to capture the scope of the actual invention that is

disclosed, described, and patented." *AstraZeneca AB v. Mylan Pharm. Inc.*, 19 F.4th 1325, 1335 (Fed. Cir. 2021) (reversing district court's construction that a claim term should have its "plain and ordinary meaning" in view of the intrinsic record as a whole, including the prosecution history, and expressly rejecting argument that "the prosecution history is irrelevant because there is no clear and unmistakable disavowal of claim scope"). Nortrup is likewise wrong to argue that the prosecution history is irrelevant unless there is a clear and unmistakable disavowal.

In any event, to the extent deemed necessary, Nortrup's statements during prosecution *do* amount to a clear and unmistakable disavowal of "the use [of] an in-vehicle integrated GPS system." Ex. D at 292-93. A prosecution disclaimer can arise from either a claim amendment or from arguments made to the PTO. *E.g., Tech. Props. Ltd. LLC v. Huawei Techs. Co., Ltd.*, 849 F.3d 1349, 1357-58 (Fed. Cir. 2017). Here, Nortrup both amended the claims and made arguments to the PTO that disclaimed the use of an in-vehicle navigation system in determining the location of the claimed cell phone.

Nortrup added new application claims in an office action response which recited, in relevant part, "an in-vehicle data receiver configured to receive a current location and a roadway map of an area proximate the current location from a portable communication facility." Ex. D at 226-28. The Examiner responded with a Final Rejection rejecting all pending claims as obvious over prior art references. *Id.* at 256-61.

Nortrup filed a Response After Final Action in which he amended the pending claims and made explanatory remarks, both of which are important to claim construction here. Nortrup amended claim 9 (which corresponds with issued claim 1) in relevant part as follows:

> an in-vehicle data receiver <u>forming a part of a vehicle</u> configured to receive a ~~current location and a~~ roadway map of an area proximate <u>a current location of a first cell phone, as determined by the first cell phone, and a route from</u> the current location ~~from a portable communication facility~~ <u>to a destination based, at least in</u>

part, on an estimated roadway traffic condition

*Id.* at 288. Nortrup's amendments had two substantive components. *First*, they specified that the "current location" was the current location of the first cell phone, as opposed to the current location of some other device (such as the vehicle). *Second*, Nortrup added the limitation "as determined by the first cell phone" to further narrow the claim and further distinguish the prior art. If Nortrup's amendments were intended to *only* distinguish prior systems that used a vehicle's location instead of a cell phone's location, regardless of how the cell phone's location was determined, then the second limitation described above would have been unnecessary.

With these amendments, Nortrup submitted "Remarks" that provided "context," focusing on the new language that the "claimed inventions" recite the use of "*a current location of a cell phone, as determined by the cell phone*." *Id.* at 292 (emphasis in original). He explained that the "cited art teaches the use [of] an in-vehicle integrated GPS system to determine a vehicle's location." *Id.* Nortrup asserted that the "present claims" stood in "*stark contrast*" to the prior art. *Id.* "A system in accordance with the presently claimed inventions, for example, *would operate as intended whether or not the vehicle was equipped with GPS*." *Id.*

Nortrup then reiterated that the prior art did not teach or suggest a receiver "configured to receive a roadway map of an area proximate *a current location of a first cell phone, as determined by the first cell phone*." *Id.* at 293. (emphasis in original). Instead, Nortrup argued, "[t]he cited art *relies on an in-vehicle integrated GPS to provide a location of a vehicle*." *Id.* The patent examiner then withdrew the obviousness rejections "based on the amendment and the substance of the applicant's remarks and arguments." *Id.* at 345-46.

Nortrup's remarks confirm that the claims must be interpreted to exclude the use of an in-vehicle integrated navigation system in the cell phone's determination of its location. This is precisely what Nortrup unambiguously argued when he said that the vehicle "would operate as

intended whether or not the vehicle was equipped with GPS." If the claimed invention would operate as intended even without vehicle GPS, it necessarily follows that the claimed invention *cannot* be using the vehicle GPS to determine its location. Nortrup reinforced this statement by explicitly distinguishing the prior art because it "relies on an in-vehicle integrated GPS to provide a location of a vehicle." The claimed inventions, in turn, necessarily must *not* rely on an in-vehicle integrated GPS to provide a location of a vehicle. These statements reinforce Toyota's construction and directly contradict Nortrup's position that the claims allow the phone's location to be determined based on vehicle-integrated GPS. That the patent examiner expressly relied upon Nortrup's arguments in withdrawing the rejections only reinforces that the claim language should be interpreted consistently with Nortrup's arguments.

Nortrup's arguments about the prosecution history focus on the lack of a "clear and unmistakable disclaimer," which as explained above is not a requirement for the prosecution history to inform the Court's construction; regardless, the interpretation Nortrup argues for now is entirely *un*reasonable. Nortrup asserts: "The phone could, for example, consider its own GPS data, *the vehicle's GPS data, speedometer data*, etc., and then determine its location (*which is also the vehicle's location* by virtue of the phone being inside the car) by assessing the data collectively." Nortrup Br. at 17 (emphasis added). In this scenario, the phone "relies upon an in-vehicle integrated GPS to provide a location of a vehicle" to determine its location—exactly what Nortrup told the Patent Office (and by extension the public) what his claimed invention did not encompass. Ex. D at 292. Unsurprisingly, Nortrup cites nothing from the intrinsic record supporting this interpretation, and in fact the '048 patent describes nothing like this scenario. Nortrup relies solely on his expert witness's reading of the prosecution history, a reading that is 180 degrees from what the prosecution history actually says; the Court need not and should not

credit expert testimony that contradicts the intrinsic record. *Juniper Networks, Inc. v. Swarm Tech. LLC*, No. 2023-1980, 2025 WL 1793722, at *5 (Fed. Cir. June 30, 2025).[4]

Finally, the Court should apply the same claim construction to all '048 patent claims, because Nortrup drew no distinctions between the claims reciting the "current location" during prosecution. Where an applicant makes statements during prosecution that treat different language across claims the same way, it is appropriate for the Court to likewise construe the language in those claims the same way. *Nystrom v. TREX Co.*, 424 F.3d 1136, 1143 (Fed. Cir. 2005). Here, in the same office action response in which Nortrup amended the claims and made the remarks discussed above, Nortrup added new application claims 24-28, which correspond with issued claims 13-18. Independent application claim 28 included the "a current location of a first cell phone, as determined by the first cell phone" language also found in application claim 9, while the other two new independent claims, 24 and 26, merely recited "a current location." Ex. D at 288-291.

Nortrup's remarks discussed above were addressed to *all* the pending claims, notwithstanding any difference in wording. Nortrup commented that "the claimed inventions" recite "the use of a current location of a cell phone, as determined by the cell phone." *Id.* at 291. Nortrup explained that "the present claims" were in contrast to the prior art that used an in-vehicle GPS system, and that "a system in accordance with the presently claimed inventions" would operate as intended with or without vehicle GPS. *Id.* Nortrup's remarks included nothing

---

[4] Nortrup's office action response also sought to distinguish the prior art based on the "data representative of a location of each of a plurality of other cell phones…" limitation of claim 1. Ex. D at 293. Nortrup does not argue that this second distinction negates the first distinction, and with good reason: statements that distinguish the prior art on bases other than the disputed limitation should not be relevant to the claim construction analysis. *E.g., Roku, Inc. v. Universal Elecs., Inc.*, No. 2023-1019, 2024 WL 3042701, at *4 (Fed. Cir. June 18, 2024).

indicating that claims 24 and 26 should be interpreted differently. This history shows that "a current location" in '048 patent claims 13 and 15 should be construed the same way as "a current location of a first cell phone, as determined by the first cell phone" in claims 1 and 17. Nortrup complains that there is no "textual hook" for this construction, but the textual hook is the language "a current location" in claims 13 and 15, which Nortrup made clear to the Patent Office and the public has the same meaning as the longer "current location" phrase in claims 1 and 17.

Nortrup's comments during prosecution of the subsequent '131 patent further support Toyota's construction. The '131 patent's claims recite a "self-determined location of said cell phone." Nortrup submitted a declaration during prosecution distinguishing the claimed inventions from what he termed "two schools of thought on how to gather traffic data" known at the time of the alleged invention. One of the "schools" included "in-vehicle 'probes'" that "relied on a vehicle's GPS" and could "*couple to a cell phone and use the cell phone's connectivity* to communicate the vehicle's GPS data." Ex. E at 375-75. The second approach used "cell phone location and movement to determine traffic data." *Id.* at 375. An advantage of this second approach was that "no specialized in-vehicle hardware was required." *Id.* Nortrup declared that "part of my invention lies in the discovery that, even though in-vehicle navigation systems might be more robust … these systems needed to be based on cell phone traffic data instead." *Id.* at 375-76. Thus, his approach was to "*integrate the cell phone location data* into an in-vehicle navigation system." *Id.* at 376 (emphasis added). Nortrup relied on these comments in his remarks to distinguish prior art. *Id.* at 370-73.

These comments reinforce key points. *First*, Nortrup made clear that his alleged invention was integrating a cell phone with its own "location data" into a vehicle navigation system. These remarks conflict with Nortrup's litigation position that the claims encompass

23

situations where the cell phone's location determination needs and uses vehicle navigation data.

*Second*, Nortrup acknowledged that it was known in the prior art for an in-vehicle navigation system to transmit its GPS data to a cell phone and for the cell phone to then transmit that data. Nortrup distinguished his claimed inventions from that prior art, but his litigation interpretation of "as determined by the cell phone" would encompass that type of system.

In sum, the intrinsic shows convincingly that the claimed "current location" is determined by the cell phone without use of an in-vehicle integrated navigation system.

C.    **"a computer mounted to said vehicle and configured to receive" / "said computer being configured to communicate" / "said computer … configured to cause … thereby causing…" ('131 patent, claims 1, 11)**

| Term | Toyota's Construction | Nortrup's Construction |
|---|---|---|
| "a computer mounted to said vehicle and configured to receive" | The overall phrase is subject to Pre-AIA 35 U.S.C. § 112 ¶ 6.<br><br>Function: receive a roadway map of an area proximate a current location of a first cell phone, as determined by the first cell phone, and a route from the current location to a destination based, at least in part, on an estimated roadway traffic condition.<br><br>Structure: None; indefinite. | Plain and ordinary meaning.<br><br>"computer" – plain and ordinary meaning, i.e., an electronic device or component with a data processor |
| "said computer being configured to communicate" | Subject to Pre-AIA 35 USC 112 ¶6.<br><br>Function: communicate with a cell phone.<br><br>Structure: None; indefinite. | Plain and ordinary meaning.<br><br>"computer" – plain and ordinary meaning, i.e., an electronic device or component with a data processor |
| "said computer … configured to cause … thereby causing…" | Subject to Pre-AIA 35 USC 112 ¶6.<br><br>Function: to cause said cell phone to transmit a self-determined location of said cell phone and a destination signal based on said user input over a cellular network to a networked computer facility; thereby causing said cell phone to receive map data from said networked computer facility over said cellular network, and to cause said map data to be | Plain and ordinary meaning.<br><br>"computer" – plain and ordinary meaning, i.e., an electronic device or component with a data processor |

| transmitted from said cell phone to said computer such that a map based on said map data is displayed on said display and shows said self-determined location of said cell phone, said route and said traffic conditions along said route.<br><br>Structure: None; indefinite. | "cause" / "causing" – plain and ordinary meaning, i.e., to bring about, make happen, initiate, or trigger an effect or result |
|---|---|

### 1. The "computer" terms are written in means plus function format and subject to § 112, ¶ 6.

At the outset, the parties do not dispute that the claimed "computers" perform functions. Bayen Decl., ¶¶ 71, 77-80; Nortrup Br. at 24. As with "data receiver," Nortrup's argument that "computer" is a structure and therefore §112, ¶6 does not apply ignores the complete and proper legal inquiry, which is "whether a POSITA would understand the disputed term not just as structure, but as sufficient structure '*for performing the claimed function.*'" *XR Commc'ns*, 2023 WL 3529830 at *2 (emphasis added). Both parties' experts agree that a computer is a device that processes data and treat the term as essentially equivalent to processor, *compare* Shoemake Decl., ¶55 *with* Bayen Decl. ¶72, and Nortrup concedes the experts' definitions are consistent. Nortrup Br. at 21. But as seen in cases like *WSOU I*, *WSOU II*, *XR Communications*, *Intelligent Automation Design*, and *Egenera*, merely using a word like "processor" or "control circuit" that suggests *some* structure is insufficient. The claims must recite sufficient structure to *perform the claimed functions*. *E.g., Egenera,* 972 F.3d at 1374.

The '131 patent fails to do so. As Dr. Shoemake explains, "a POSITA would understand that the term 'computer' does not connote sufficiently definite structure for performing the corresponding functions of the claims." Shoemake Decl., ¶¶54-55, 58-60. His opinion stands unrebutted, because Nortrup does not offer any contrary evidence addressing how the claimed "computer" is sufficient structure to perform the required functions. *See* Bayen Decl., ¶¶ 71-88. This is similar to the hole in Nortrup's "data receiver" argument, but Nortrup's argument is even

more flawed here because the '131 patent "computer" functions go beyond just "receiving" to include "causing" a cell phone to transmit data.[5] The closest Dr. Bayen comes to addressing the functional language is to argue that the "causing" functions are "standard networked-computing behavior" (Bayen Decl., ¶ 85); as explained above, this position is entirely at odds with Nortrup's claim to have invented a new, non-standard "computer," and Nortrup cites no evidence that a "standard" or generic "computer" was sufficient structure to perform these functions. Nortrup also argues that the computer is structure because it is "mounted to said vehicle" (Nortrup Br. at 21); again, this language does not impart any sufficient structure for performing the specific claimed receiving, communicating, and causing functions.  Shoemake Decl., ¶ 55.

Nortrup wrongly contends that Dr. Shoemake's testimony regarding the lack of industry standards is irrelevant. Nortrup Br. at 23. The absence of an industry standard for the recited functions—which Nortrup does not dispute—goes to whether a POSITA would have understood the disputed term to refer to a particular structure or class of structures such as, for example, "conventional programs or code existing in the prior art at the time of the invention." *Dyfan*, 28 F.4th at 1368. It also undermines Dr. Bayen's claim that these functions are "standard."

The cases Nortrup cites do not support its position. *See* Nortrup Br. at 20-21. Notably, the standard applied in *Inventio* was expressly overruled by the Federal Circuit in *Williamson*. *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 649 F.3d 1350 (Fed. Cir. 2011), *overruled by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015). In *Inventio*, the court concluded that "computing unit" was not "so structurally devoid" to overcome the "strong

---

[5] Nortrup has also proposed definitions for the words "cause" and "causing." Toyota submits that the words "cause" and "causing" should be afforded their plain and ordinary meaning and no further construction is required. Toyota's position with respect to the claim term "configured to" is set forth above in Section II.A.3.

presumption" flowing from the absence of the term "means." *Id.* at 649 F.3d at 1360. The *en banc* Federal Circuit in *Williamson* found that its earlier "opinions in … *Inventio* [and other cases]… established a heightened bar to overcoming the presumption" against means-plus-function claiming that was "unjustified," "should [be] abandon[ed]," and "has resulted in a proliferation of functional claiming untethered to § 112, para. 6 and free of the strictures set forth in the statute." *Williamson*, 792 F.3d at 1349. *Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1354 (Fed. Cir. 2020) ruled that the claimed "digital processing unit" did not invoke §112, ¶6, noting that there was "no evidence that a [POSITA] would regard the term" as "purely functional" and instead credited the Patent Trial and Appeal Board's finding that the term "[a]s used in the claim" referred to a "class of known structures" "that could be found in any general-purpose computer." The same is not true here. Finally, Nortrup cites *Stellar*, which is inapposite in the context of the Asserted Patents, as discussed at length above.

### 2. The specification of the '131 patent fails to disclose sufficient corresponding structure for the claimed "computer."

As with "data receiver," Nortrup does not even attempt to demonstrate the specification provides adequate corresponding structure if the Court determines that the "computer" claim phrase is subject to § 112, ¶6. As demonstrated by Dr. Shoemake, there is no credible argument that the specification discloses corresponding structure for the claimed "computer" to carry out the functions recited in the claims. The '131 patent includes scattered references to the word "computer" (most often as an adjective), but none of them or anything else in the specification identifies an algorithm, communication architecture, data-processing structure, or other implementation detail as corresponding structure for performing the recited computer-implemented functions. Shoemake Decl., ¶¶57-61. It is remarkable that Nortrup cannot point to any disclosure of the "computer" system he allegedly invented anywhere in the specification.

### D.    "said cell phone interface being configured … thereby causing …" ('131 patent, claim 24)

| Toyota's Construction | Nortrup's Construction |
|---|---|
| Subject to Pre-AIA 35 USC 112 ¶6. | Plain and ordinary meaning. |
| Function: to cause said cell phone to transmit a self-determined location of said cell phone, thereby causing said cell phone to receive map data, and to cause said map data to be transmitted from said cell phone to said computer. | "cause" / "causing" – plain and ordinary meaning, i.e., to bring about, make happen, initiate, or trigger an effect or result |
| Structure: None; indefinite. | "cell phone interface" – plain and ordinary meaning, i.e., hardware and/or software of a computer, such as ports, transmitters and/or receivers, that allows it to communicate with a cell phone |

### 1.    The "cell phone interface" claim phrase is written in means-plus-function format and is therefore subject to §112, ¶6.

Like "data receiver" and "computer," the claimed "cell phone interface" unquestionably recites functions, and like those claims, the "cell phone interface" does not recite sufficient structure to perform the claimed functions. A "POSITA would have understood that a 'cell phone interface' is a generic reference to any hard[ware], software, or combination of both, enabling interaction with a cell phone." Shoemake Decl., ¶63. This understanding is consistent with Dr. Bayen's definition that "a 'cell phone interface' is the hardware and/or software of a computer, such as ports, transmitters, receivers, or other communication components, that allows the computer to communicate with a cell phone," Bayen Decl., ¶89, and with Nortrup's proffered dictionary definitions, Nortrup Br. at 26. Even if "cell phone interface" conveys *some* structure, the term does not convey sufficient structure to carry out the recited functions. Shoemake Decl., ¶¶62-63. As an example, according to Dr. Bayen, the "cell phone interface" could be simply an industry-standard Universal Serial Bus (USB) port and its accompanying protocol and software. Bayen Decl., ¶91. Dr. Bayen does not, and cannot, explain how a familiar USB port would be sufficient to "cause" a cell phone to transmit and receive the specific data recited in the claimed

functions, and the patent's specification does not mention USB. Given the state of the art, a POSITA would have required much more information than is provided in the '131 patent to understand the structure of the claimed "cell phone interface."

As with "data receiver" and "computer," Nortrup makes no attempt to demonstrate that a POSITA in 2004 would have understood the claimed "interface" to be sufficient structure to perform the functions recited in the claims of the '131 patent. Nortrup instead contends this dispute "turns primarily on Toyota's contention that 'cell phone interface' is supposedly 'structureless.'" Nortrup Br. at 26. This misstates Toyota's position and underscores Nortrup's failure to properly apply the law: "not whether a claim term recites *any* structure but whether it recites sufficient structure" to perform the claimed functions. *Egenera,* 972 F.3d at 1374.

To support his position, Nortrup improperly reads individual claim terms in isolation and over-generalizes from case law construing different terms that include the word "interface" in non-analogous contexts. Nortrup Br. at 28.  For example, the claim term at the core of the dispute in *Apex Inc. v. Raritan Computer, Inc.* 325 F.3d 1364, 1372 (Fed. Cir. 2003) (a pre-*Williamson* decision) was "interface circuit," not merely "interface." *Id.* at 1373-75. As another example, the term at issue in *Intellectual Ventures II LLC v. BITCO Gen. Ins. Corp.* was "administrative interface," not just "interface," and the specification included over 55 Figures illustrating that this "interface" was a graphical user interface. No. 6:15-CV-59, 2016 WL 125594, at *13 (E.D. Tex. Jan. 11, 2016). In contrast, Nortrup and his expert cite nothing in the specification in support of their position on "cell phone interface." Nortrup Br. at 25-29; Bayen Decl. ¶¶89-99. The other cases Nortrup cites are similarly inapposite.

### 2.    The specification of the '131 patent fails to disclose sufficient corresponding structure for the claimed "cell phone interface."

Nortrup again does not even attempt to argue that the specification provides sufficient

corresponding structure if the Court finds the claim phrase "cell phone interface" is subject to §
112, ¶6. Nor could he. While the specification makes a number of references to a "user
interface," e.g., '131 patent, claim 24, 2:29-32, 5:23-26, 5:40-47, 13:41-46, the specification
makes only a single reference to a "cell phone interface." Shoemake Decl., ¶65. Specifically, it
provides that a "route information facility user interface" may be a "cell phone interface." *Id.*;
'131 patent, 2:31-34. This reference does not convey any definite structure for carrying out the
claimed functions, nor does any other portion of the specification. *Id.*, ¶¶64-66.[6]

**E.    "a self-determined location of said cell phone" ('131 patent, cl. 1, 11, 24, 29)**

| Toyota's Construction | Nortrup's Construction |
|---|---|
| "a current location of a first cell phone, as determined by the first cell phone without use of of an in-vehicle integrated navigation system" | Plain and ordinary meaning.<br><br>"self-determined location" – plain and ordinary meaning, i.e., a location determined by the device itself |

The parties agree that this term in the '131 patent presents the same dispute as the
materially similar term in the '048 patent, "a current location of a first cell phone, as determined
by the first cell phone." Toyota's construction should be adopted for the same reasons set forth in
Section II.B above. The prosecution history of the '048 patent informs the meaning of the claim
language in the later-filed '131 patent. *Ignite USA, LLC v. CamelBak Prods.*, LLC, 709 F. App'x
1010, 1013 (Fed. Cir. 2017).

**CONCLUSION**

Toyota respectfully submits the Court should adopt Toyota's proposed constructions.

---

[6] Toyota's position with respect to the term "configured to" is set forth above in Section II.A.3.
In addition, the terms "cause" and "causing" require no construction as explained above in FN 4.

Dated:  February 11, 2026

Respectfully Submitted

*/s/     Steven J. Routh*

Steven J. Routh (D.C. Bar # 376068)
srouth@orrick.com
Sten Jensen
sjensen@orrick.com
T. Vann Pearce, Jr.
vpearce@orrick.com
Jacob Felicetty
jfelicetty@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
2100 Pennsylvania Ave
Washington, DC 20037
Tel: (202) 339-8400
Fax: (202) 339-8500

*Attorneys for Toyota Motor Corporation,*
*Toyota Motor North America, Inc., Toyota*
*Motor Sales, U.S.A., Inc., and Toyota Motor*
*Engineering & Manufacturing North*
*America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the above TOYOTA DEFENDANTS' RESPONSIVE

CLAIM CONSTRUCTION BRIEF was served on all counsel of record who have consented to

accept service by electronic means via the Court's CM/ECF system, on February 11, 2026.

*/s/ Steven J. Routh*
Steven J. Routh
