# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| EDWARD NORTRUP,<br><br>    Plaintiff,<br><br> v.<br><br>TOYOTA MOTOR CORPORATION, TOYOTA MOTOR NORTH AMERICA, INC., TOYOTA MOTOR SALES, U.S.A., INC., and TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC.<br><br>    Defendants. | Case No.: 4:25-CV-328-SDJ<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF EDWARD NORTRUP'S REPLY CLAIM CONSTRUCTION BRIEF**

Toyota has not proven that the claims at issue are means-plus-function or indefinite. It does not dispute that "data receiver," "computer," or "interface" are not nonce terms, but are engineering terms naming structures. Despite the presumption that the claim language is not means-plus-function, Toyota still asks the Court to apply § 112(f) and disregard the structural recitations in the claims, as though the claims use merely a black box "means."

To get there, Toyota—relying on a blatant misreading of *WSOU II* and *Stellar*—resorts to mischaracterization of the Asserted Patents' disclosure. *WSOU II* and *Stellar* do not transform ordinary structural terms like "processor" into "black boxes" unless the specification demands it by defining the term as broadly referring to anything that performs the stated function. There is no such definitional broadening of the claim terms here. Toyota next resorts to mischaracterizing the terms' claimed functions, and then improperly faulting the claims for not spelling out in exacting detail how the system performs those functions. While Toyota's cases are easily distinguishable, Toyota largely ignores the many cases Nortrup has cited that reject its theories.

Regarding "location determination," Toyota's assertions fail to hold up to scrutiny and do not satisfy the exacting standard required to find a disclaimer of claim scope. And Toyota has not even sought to clarify its vague "configured to" proposed construction.

## I. THE ASSERTED STRUCTURAL TERMS DO NOT INVOKE § 112(f).

### A. Toyota Concedes the Key Points Undercutting Its § 112(f) Arguments.

The disputed limitations at issue do not use "means," so it is undisputed that the presumption against § 112(f) applies. Importantly, Toyota admits the disputed terms are "non-nonce" terms[1] (Toyota Br., p. 3), admitting that this is not the typical *Williamson* scenario where

---

[1] Toyota's later reference to these terms as "black box[es]" is confused, as courts use "nonce" and "black box" interchangeably to refer to stand-ins for "means." *See, e.g.*, *WAPP Tech Ltd. P'ship v. Bank of Am., N.A.*, No. 4:21-CV-670, 2022 WL 2463569, at *6, *9 (E.D. Tex. July 6, 2022) (rejecting argument that "interface" terms are "generic, black-box nonce word[s]").

1

a patentee uses a nonce stand-in for "means" ("module," "unit," etc.). Toyota likewise does not dispute that "receiver," "computer," and "interface" are common engineering terms.

Toyota's technology tutorial further undermines the premise that these claim terms were unfamiliar or structurally opaque. Toyota's tutorial explains, e.g., that in-vehicle navigation systems with map displays, route calculation, and GPS-based guidance were commercially available before 2004; portable navigation devices provided similar capabilities; and by 2004 cell phones had capable processors, could run applications, and could include GPS/navigation capability and internet connectivity. (Toyota Tech. Tutorial.) A POSA in 2004 would thus readily grasp the component categories at issue here, e.g., vehicle-mounted computers/displays, receivers that accept data, and interfaces that allow electronic devices to communicate with each other.[2] *See Panoptis Pat. Mgmt., LLC v. Blackberry Ltd.*, No. 2:16-CV-62, 2017 WL 497571, at *19 (E.D. Tex. Feb. 7, 2017) ("The amount of detail required to be included in claims depends on the particular invention and the prior art.") (finding "processor" structural).

Given its concessions, Toyota's burden is unsatisfied. Toyota must show that, in these claims and in this technical context, these structural terms have lost their meaning as structural identifiers and instead operate as functional stand-ins for "means." Toyota does not make that showing, instead presenting a litany of red herrings[3] and mischaracterizations.

---

[2] Contrary to Toyota's assertion, Nortrup does not contradict himself by describing the claimed system as innovative, while also contending that "data receiver," "computer," and "interface" are structural terms with established meanings. (Toyota Br., p. 1.) Patent claims routinely describe new systems by reference to categories of known components. In any event, the § 112(f) inquiry does not turn on whether the named component is novel; it turns on whether the claim term, read in context, denotes structure to a POSA. Here, a POSA would understand "data receiver" to be a data receiver even if the claimed system in which it operates is a new configuration of known components.

[3] Toyota's discussion of the broader patent family history is both irrelevant and misleading. Toyota fails to explain how it bears on the meaning of the *asserted* claim terms. Nor do the filing

### B. Toyota's Principal Cited Case Is Inapposite Because It Turned on a Broadening Definition in the Specification Not Present Here.

Toyota's principal authority—*WSOU Invs. LLC v. Google LLC* ("*WSOU II*")—is a narrow and distinguishable application of means-plus-function law. No. 2022-1063, 2023 WL 6889033, at *4 (Fed. Cir. Oct. 19, 2023). The court applied § 112(f) to one patent where the "processor" was *defined by the specification* so broadly that it referred to "hardware, software, or essentially anything else," with little claim-level context to anchor the term. *Id.* at *3. *WSOU II* reached the opposite result for the same term appearing in another patent because that patent's specification did *not* have the broadening language and the claim language recited "multiple elements and their connections to one another." *Id.* at *4. This Court in *Stellar* relied on that contrast in rejecting the attempt to treat "computer processor" as a § 112(f) limitation. *Stellar, LLC v. Motorola Sols., Inc.*, No. 4:23-CV-750-SDJ, D.I. 169, 22-24 (E.D. Tex. Apr. 21, 2025).

The claims here most closely resemble the claims to which means-plus-function law did not apply in *WSOU II* and *Stellar*. Nothing in the Asserted Patents explicitly defines the meaning of "data receiver," "computer," or "cell phone interface," relying instead on their ordinary meanings to a POSA. Toyota does not identify anything in the specification that would contradict the plain structural meaning of these terms.

Moreover, the structure of the terms at issue here, like in *Stellar* and *WSOU II* (with respect to the non-means-plus-function claims), is supported by the recited interconnections with other structural components. The claims do not present a free-floating "computer," "data receiver," or "cell phone interface" devoid of all context. Instead, they recite in-vehicle computer

---

dates of the Asserted Patents impact their validity; Nortrup is entitled to claim subject matter disclosed in the original 2004/2005 specifications, and the continuation practice reflected in the family history is common practice authorized by statute. *See* 35 U.S.C. § 120. Finally, the *inter partes* review cited by Toyota involved a patent having materially ***different*** claim language from the Asserted Patents.

systems comprising a vehicle-mounted computer or data receiver and a vehicle-mounted display, and, in several independent claims, reference a cell phone that is expressly separate from the vehicle and that communicates over a cellular network with a networked computer facility, with specified data flow capability among those components. That is precisely the kind of multi-element systemic context that *WSOU II* and *Stellar* relied upon to reject § 112(f) treatment.

   **C.**  **Toyota Seeks to Attribute Unassigned Functions to the Claim Terms and Demands Excessive Detail in the Claims.**

The claims do not assign the "data receiver," "computer," or "cell phone interface" the job of generating traffic estimates or computing routes, as Toyota suggests. (Toyota Br., pp. 10-11, n.3.) Their recited functions are the operations *expressly assigned to them in the claims*—e.g., sending and receiving data. Toyota's "sufficient structure for the function" argument thus rests on an attempted rewriting of the relevant "functions" as something other than what is specified by the claim language. (Toyota Br., pp. 10-11, n.3.) Moreover, Toyota essentially demands that the claims themselves recite a technical blueprint, which is not the standard:

> Defendant's argument here is more in the nature of enablement or disclosure of corresponding structure where it has already been determined that a term is a means-plus-function limitation, and not the threshold question whether § 112, ¶ 6 applies in the first place. . . . Requiring the patent to describe precisely how the claimed functions are achieved . . . goes beyond the threshold trigger for the application of § 112, ¶ 6.

*CA, Inc. v. Netflix, Inc.*, No. 2:21-CV-80, 2021 WL 5323413, at *22 (E.D. Tex. Nov. 16, 2021).

For the "data receiver," the only function the claims assign is to "receive a roadway map … and a route" or "a visual indication of estimated roadway traffic condition." Toyota nevertheless argues as if the receiver must perform extraneous and unrecited "data handling," "processing," etc. to achieve "mapping and routing." (Toyota Br., pp. 10-11, n.3.) The claims place the mapping and route generation elsewhere; they merely require the receiver to be configured to be able to receive certain information. Similarly, the vehicle-mounted "computer"

4

and "cell phone interface" are recited as configured to cause communications with the phone in certain ways, not necessarily to provide a detailed implementation of routing or traffic analytics.

Step one of the proper analysis merely asks: do "data receiver," "computer," and "cell phone interface" denote structure for the functions as actually recited? Courts do not broaden the recited function to include additional, unassigned tasks and then declare that the structural term is "insufficient" because the claim does not provide exacting detail for those extra tasks. *See, e.g.*, *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed. Cir. 2001) ("a court may not import functional limitations that are not recited in the claim"). Toyota's mismatch between its proffered "function" and the actual claim language, as well as its apparent demand for the claims to spell out additional implementation details, are fatal flaws in its § 112(f) theory. When the claimed functions and the step one standard are properly understood, the structure for the challenged terms is clearly sufficient.

> **D.     Toyota's Focus on the Specification Is Misplaced and Toyota Misrepresents What the Specification Teaches.**

Toyota's § 112(f) argument also attempts to improperly shift the step one inquiry away from the claim language and toward the written description. For example, Toyota faults Nortrup for allegedly devoting "only a single paragraph" of his opening brief to the specification and argues that "the intrinsic record is key" to determining whether the terms connote structure. (Toyota Br., p. 3.) From there, Toyota tries to make the outcome turn on how often particular words appear in the written description and on a depiction in one figure. (*Id.* 3–4.)

That framing is inconsistent with the authorities Toyota invokes. *Stellar* and *WSOU II* did *not* treat "structural guidance" as a requirement that the written description recite a circuit diagram or provide algorithms, as Toyota incorrectly suggests. (Toyota Br., pp. 4, 10.) Instead, *Stellar* used "structural guidance" to describe what the surrounding ***claim language*** supplied—in

5

that case "multiple elements and their connections to one another." *Stellar*, p. 22 (quoting *WSOU II*, 2023 WL 6889033, at *4 (Fed. Cir. Oct. 19, 2023)); *id.* at 24 ("the claim language provides 'structural guidance' by reciting additional components"). Toyota turns that phrase on its head by stating that it requires an examination of the written description. Step one asks whether the claim term, read in the context of surrounding claim language and through the lens of a POSA, denotes structure or a class of structures—not whether the specification provides "structural guidance." *See, e.g.*, *Skky, Inc. v. MindGeek, s.a.r.l.*, 859 F.3d 1014, 1019 (Fed. Cir. 2017).

In any event, Nortrup's tutorial identifies examples where the common specification does, in fact, describe and depict the vehicle-side architecture and the flow of information between the phone, the vehicle, and a networked computer facility. (Nortrup Tech. Tutorial.) The specification and claims are complete and readily understandable to a POSA. Toyota states that "Nortrup's Opening Brief devotes only a single paragraph to the common specification of Asserted Patents" (Toyota Br., p. 3), but it fails to even mention that Nortrup explicitly directs the reader to the tutorial for background in the same paragraph (Opening Br., p. 5).

Toyota's focus on Figure 35 further illustrates the misdirection. (Toyota Br., pp. 3-4, 10.) Toyota tells the Court that Figure 35 is Nortrup's "principal specification" cite and emphasizes that "it is hard to imagine a specification providing less 'structural guidance.'" (Toyota Br., pp. 3–4.) But Figure 35 depicts vehicle-to-vehicle communications, not the phone-to-vehicle architecture reflected in the independent claims at issue. That is why Figure 35 does not appear in Nortrup's tutorial. Toyota's decision to anchor its step one position to this strawman argument further highlights that it is ignoring the disclosures that undermine its baseless positions.

### E. Toyota's Remaining Cited Cases Are Distinguishable and Toyota Fails to Meaningfully Address Nortrup's Cited Authorities.

Toyota's § 112(f) authorities other than *WSOU II* and *Stellar* (which are discussed above)

6

are easily distinguishable. *Egenera, Inc. v. Cisco Sys., Inc.* addressed "logic"—which was a "black box recitation of structure." 972 F.3d 1367, 1374-75 (Fed. Cir. 2020). That is not the case here, where the claim terms themselves are known structural components. *XR Commc'ns, LLC v. ARRIS Sols., Inc.*, turned on a structure/function mismatch; the Federal Circuit found that known "search receiver logic" structures were not tied to the "updating routing information" function the claim required. No. 2022-1125, 2023 WL 3529830, at *1 (Fed. Cir. May 18, 2023). Here, by contrast, the relevant receiver function is receiving information—squarely within what data receivers were known to do. In *Advanced Ground Info. Sys., Inc. v. Life360, Inc.*, the patentee's own expert testified the term was "coined for the purposes of the patents-in-suit" and not used in common parlance to designate structure. 830 F.3d 1341, 1347–48 (Fed. Cir. 2016). In *Fiber, LLC v. Ciena Corp.*, the term was "control," language the court treated as a nonce term. 792 F. App'x 789, 794 (Fed. Cir. 2019). And in *Intelligent Automation Design, LLC v. Zimmer Biomet CMF & Thoracic, LLC*, the patentee did "not contest the district court's [step one] means-plus-function interpretation." 799 F. App'x 847, 850 (Fed. Cir. 2020). In short, none of these cases support Toyota's assertion that the instant claims utilize means-plus-function drafting.

Not only are Toyota's cases distinguishable, Toyota *fails* to meaningfully grapple with the authorities that squarely defeat their position. Toyota largely ignores *Huawei*, *Mobile Telecommunications*, and *Alfred E. Mann*, holding that "receiver" connotes structure; *Inventio* and *Prisua*, recognizing processor-based computing terms as structural; and *Apex*, *Genband*, *Intellectual Ventures*, and *Perdiem*, each treating "interface" terminology as structural. Those cases were central to Nortrup's Opening Brief, yet Toyota mentions them sparingly, if at all. Instead, Toyota leans heavily on *Stellar*, selectively quoting (and actually misrepresenting) general § 112(f) standards, while sidestepping the actual holding that squarely cuts against them.

7

Toyota likewise fails to even cite this Court's *CDN* and *SQWIN* cases, which also reject similar efforts to characterize ordinary system components as structureless "black boxes."

## II. TOYOTA'S PROPOSED "WITHOUT VEHICLE GPS" LIMITATION FINDS NO SUPPORT IN THE INTRINSIC RECORD.

As Toyota writes in its brief, "A POSITA would have understood [that the applicant] intended to distinguish the claimed invention from the many systems that determined a location via an in-vehicle navigation system." (Toyota Br., p. 16.) Those prior art systems were self-contained in-vehicle navigation systems, which did not utilize a cell phone *at all* for location determination. (Bayen Decl., ¶¶ 67-69.) That is made clear from the applicant's file history statement that Toyota *totally ignores*:

> The integrated vehicle GPS system *determines the location of the vehicle and communicates its location to a mapping service*. In stark contrast, the present claims are directed to a system that uses a location of a first cell phone, as determined by the first cell phone as a basis for receiving the roadway map.

(D.I. 32-7, p. 292 (emphasis added).) In other words, the applicant distinguished in-vehicle systems that determined their own location and then used that determination for mapping directly, as opposed to the claimed system where the phone determines the location used for mapping. The fact that Toyota cannot grapple with this statement is dispositive; there is no clear and unmistakable disclaimer of any input sources that a phone can use in determining location.

Toyota argues that it need not show a clear and unmistakable disclaimer because prosecution history can "inform" claim construction even absent disavowal, citing *Eye Therapies*. (Toyota Br., p. 18.) However, *Eye Therapies* did *not* approve adding an unstated negative limitation without disclaimer or lexicography. It adopted a narrower meaning because the applicant amended the claims and then *provided an express definition*: "The applicant's use of 'i.e.' here indicates *an intent to define* the claim[ term]." *Eye Therapies, LLC v. Slayback Pharma, LLC*, 141 F.4th 1264, 1270 (Fed. Cir. 2025) (emphasis added). Here, by contrast, the

8

prosecution record does not define "as determined by the first cell phone" or "self-determined location" to mean "without use of vehicle GPS data in any manner" or "without any vehicle-provided location information whatsoever." Toyota fails to show the requisite unmistakably clear language of disclaimer in this case that was so apparent from the patentee's own definition at issue in *Eye Therapies*. Reliance on debatable implication or inference is not nearly enough.

Toyota's argument also hinges on a logical fallacy. It states, "If the claimed invention would operate as intended even without vehicle GPS, it necessarily follows that the claimed invention cannot be using the vehicle GPS to determine its location." (Toyota Br., p. 21.) That does ***not*** necessarily follow. The "would operate … whether or not the vehicle was equipped with GPS" statement in the file history is an anti-dependence statement. It describes what the invention does not necessarily require. Toyota instead treats it as a prohibition (i.e., the system ***cannot*** use, at ***any*** level, what it does not necessarily require). Systems are routinely designed to operate without a component and still use that component when available, and there is nothing in the record to disclaim that claim scope here. "Does not require" does not mean "is forbidden to use." The claim language also does not say "exclusively," "solely," or "without using vehicle inputs." It identifies the decision-maker (the phone), not the permissible universe of inputs.[4]

Toyota's tutorial further demonstrates the flaw in its logic. Toyota and its expert describe that prior art navigation systems were known to determine their location via "dead reckoning," which they describe as "continuously estimating the current location of the vehicle based on the

---

[4] Toyota's inapt classroom hypothetical depends on an assumed rule of independent work. (Toyota Br., p. 17.) That assumption comes from the classroom setting (i.e., John is a cheater because he got Jane to do his homework, and he could be disciplined as a result), not from the word "determine." Patent claims are not governed by social norms. In technical systems, a device can review and integrate external information and still "determine" the result. Nothing in the claims imposes an independence requirement, and the Court should not add one.

9

direction it's moving and how it has moved." (Toyota Tech. Tutorial.) That location determination process operates on different types of data, such as GPS, speed, direction, and time measurements. It illustrates the basic technical reality Toyota's proposed construction ignores: determining location is not synonymous with receiving one particular type of data. The determination is what the device *does* with the data inputs.

Toyota also seeks to impose the same exclusion on claims that do not recite "as determined by the first cell phone" or similar language. (Toyota Br., p. 22.) Toyota invokes *Nystrom v. TREX Co.* (*id.*), but *Nystrom* merely stands for the inapplicable proposition that a specification's consistent use of a term in a particular way can limit the term's scope. 424 F.3d 1136, 1143-44 (Fed. Cir. 2005) (consistent use of "board" to refer to a wooden board cut from a log warranted construction of "board" as "wood board"). Toyota points to no specification usage of the claim language in the Asserted Patents that is comparable to the usage of "board" in *Nystrom*.

### III. TOYOTA'S "NOT MERELY CAPABLE OF" ADD-ON TO "CONFIGURED TO" SHOULD BE REJECTED BECAUSE IT MERELY ADDS CONFUSION.

Toyota does not clearly identify a legitimate dispute over the meaning of "configured to." (Toyota Br., pp. 14-15.) Both sides appear to agree the phrase conveys that the identified component or system is set up or arranged in a manner that allows it to perform the recited function.

Toyota's proposal adds a negative limitation—"not merely capable of"—that Toyota never defines. Capable in theory? Capable after modification? Capable if additional software is installed? Toyota's brief does not say. Without a defined baseline, the Court would be inserting a vague phrase that would confuse the jury, the Court, and even the attorneys. Nortrup's construction, by contrast, states the requirement in terms a factfinder can easily understand.

10

DATED this 18th day of February, 2026.

                    By:    */s/ David K. Ludwig*

                          David K. Ludwig
                          Georgia Bar No. 616971
                          Steven G. Hill
                          Georgia Bar No. 354658
                          Hill, Kertscher & Wharton, LLP
                          3625 Cumberland Blvd., SE
                          Suite 1050
                          Atlanta, Georgia 30339-6406
                          T: (770) 953-0995
                          F: (770) 953-1358
                          Email: dludwig@hkw-law.com
                          Email: sgh@hkw-law.com

                          ***Counsel for Plaintiff Edward Nortrup***

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the above document was served via the Court's CM/ECF system, which sends notifications of such filing to all counsel of record who have consented to accept service by electronic means, on February 18, 2026.

                                          */s/ David K. Ludwig*
                                          David K. Ludwig
                                          Georgia Bar No. 616971

                                          *Counsel for Plaintiff Edward Nortrup*